# TULSA PROFESSIONAL COLLECTION SERVICES, INC. *v.* POPE, EXECUTRIX OF THE ESTATE OF POPE

No. 86–1961.   Argued March 2, 1988—Decided April 19, 1988

O'CONNOR, J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, STEVENS, SCALIA, and KENNEDY, JJ., joined. BLACKMUN, J., concurred in the result. REHNQUIST, C. J., filed a dissenting opinion, *post*, p. 492.

*Randall E. Rose* argued the cause and filed briefs for appellant.

*Phillip K. Smith* argued the cause and filed a brief for appellee.

JUSTICE O'CONNOR delivered the opinion of the Court.

This case involves a provision of Oklahoma's probate laws requiring claims "arising upon a contract" generally to be presented to the executor or executrix of the estate within two months of the publication of a notice advising creditors of the commencement of probate proceedings. Okla. Stat., Tit. 58, § 333 (1981). The question presented is whether this provision of notice solely by publication satisfies the Due Process Clause.

I

Oklahoma's Probate Code requires creditors to file claims against an estate within a specified time period, and generally bars untimely claims. *Ibid.* Such "nonclaim statutes" are almost universally included in state probate codes. See Uniform Probate Code § 3–801, 8 U. L. A. 351 (1983); Falender, Notice to Creditors in Estate Proceedings: What Process is Due?, 63 N. C. L. Rev. 659, 667–668 (1985). Giving creditors a limited time in which to file claims against the estate serves the State's interest in facilitating the adminis-

tration and expeditious closing of estates. See, *e. g.*, *State ex rel. Central State Griffin Memorial Hospital* v. *Reed*, 493 P. 2d 815, 818 (Okla. 1972). Nonclaim statutes come in two basic forms. Some provide a relatively short time period, generally two to six months, that begins to run after the commencement of probate proceedings. Others call for a longer period, generally one to five years, that runs from the decedent's death. See Falender, *supra*, at 664–672. Most States include both types of nonclaim statutes in their probate codes, typically providing that if probate proceedings are not commenced and the shorter period therefore never is triggered, then claims nonetheless may be barred by the longer period. See, *e. g.*, Ark. Code Ann. §§ 28–50–101(a), (d) (1987) (three months if probate proceedings commenced; five years if not); Idaho Code § 15–3–803(a)(1)(2) (1979) (four months; three years); Mo. Rev. Stat. §§ 473.360(1), (3) (1986) (six months; three years). Most States also provide that creditors are to be notified of the requirement to file claims imposed by the nonclaim statutes solely by publication. See Uniform Probate Code § 3–801, 8 U. L. A. 351 (1983); Falender, *supra*, at 660, n. 7 (collecting statutes). Indeed, in most jurisdictions it is the publication of notice that triggers the nonclaim statute. The Uniform Probate Code, for example, provides that creditors have four months from publication in which to file claims. Uniform Probate Code § 3–801, 8 U. L. A. 351 (1983). See also, *e. g.*, Ariz. Rev. Stat. Ann. § 14–3801 (1975); Fla. Stat. § 733.701 (1987); Utah Code Ann. § 75–3–801 (1978).

The specific nonclaim statute at issue in this case, Okla. Stat., Tit. 58, § 333 (1981), provides for only a short time period and is best considered in the context of Oklahoma probate proceedings as a whole. Under Oklahoma's Probate Code, any party interested in the estate may initiate probate proceedings by petitioning the court to have the will proved. § 22. The court is then required to set a hearing date on the petition, § 25, and to mail notice of the hearing "to all heirs,

legatees and devisees, at their places of residence," §§ 25, 26. If no person appears at the hearing to contest the will, the court may admit the will to probate on the testimony of one of the subscribing witnesses to the will. § 30. After the will is admitted to probate, the court must order appointment of an executor or executrix, issuing letters testamentary to the named executor or executrix if that person appears, is competent and qualified, and no objections are made. § 101.

Immediately after appointment, the executor or executrix is required to "give notice to the creditors of the deceased." § 331. Proof of compliance with this requirement must be filed with the court. § 332. This notice is to advise creditors that they must present their claims to the executor or executrix within two months of the date of the first publication. As for the method of notice, the statute requires only publication: "[S]uch notice must be published in some newspaper in [the] county once each week for two (2) consecutive weeks." § 331. A creditor's failure to file a claim within the 2-month period generally bars it forever. § 333. The nonclaim statute does provide certain exceptions, however. If the creditor is out of State, then a claim "may be presented at any time before a decree of distribution is entered." § 333. Mortgages and debts not yet due are also excepted from the 2-month time limit.

This shorter type of nonclaim statute is the only one included in Oklahoma's Probate Code. Delays in commencement of probate proceedings are dealt with not through some independent, longer period running from the decedent's death, see, e. g., Ark. Code Ann. § 28–50–101(d) (1987), but by shortening the notice period once proceedings have started. Section 331 provides that if the decedent has been dead for more than five years, then creditors have only one month after notice is published in which to file their claims. A similar 1-month period applies if the decedent was intestate. § 331.

## II

H. Everett Pope, Jr., was admitted to St. John Medical Center, a hospital in Tulsa, Oklahoma, in November 1978. On April 2, 1979, while still at the hospital, he died testate. His wife, appellee JoAnne Pope, initiated probate proceedings in the District Court of Tulsa County in accordance with the statutory scheme outlined above. The court entered an order setting a hearing. Record 8. After the hearing the court entered an order admitting the will to probate and, following the designation in the will, *id.*, at 2, named appellee as the executrix of the estate. *Id.*, at 12. Letters testamentary were issued, *id.*, at 13, and the court ordered appellee to fulfill her statutory obligation by directing that she "immediately give notice to creditors." *Id.*, at 14. Appellee published notice in the Tulsa Daily Legal News for two consecutive weeks beginning July 17, 1979. The notice advised creditors that they must file any claim they had against the estate within two months of the first publication of the notice. *Id.*, at 16.

Appellant Tulsa Professional Collection Services, Inc., is a subsidiary of St. John Medical Center and the assignee of a claim for expenses connected with the decedent's long stay at that hospital. Neither appellant, nor its parent company, filed a claim with appellee within the 2-month time period following publication of notice. In October 1983, however, appellant filed an Application for Order Compelling Payment of Expenses of Last Illness. *Id.*, at 28. In making this application, appellant relied on Okla. Stat., Tit. 58, § 594 (1981), which indicates that an executrix "must pay . . . the expenses of the last sickness." Appellant argued that this specific statutory command made compliance with the 2-month deadline for filing claims unnecessary. The District Court of Tulsa County rejected this contention, ruling that even claims pursuant to § 594 fell within the general requirements of the nonclaim statute. Accordingly, the court denied appellant's application. App. 3.

The District Court's reading of § 594's relationship to the nonclaim statute was affirmed by the Oklahoma Court of Appeals. *Id.*, at 7. Appellant then sought rehearing, arguing for the first time that the nonclaim statute's notice provisions violated due process. In a supplemental opinion on rehearing the Court of Appeals rejected the due process claim on the merits. *Id.*, at 15.

Appellant next sought review in the Supreme Court of Oklahoma. That court granted certiorari and, after review of both the § 594 and due process issues, affirmed the Court of Appeals' judgment. With respect to the federal issue, the court relied on *Estate of Busch* v. *Ferrell-Duncan Clinic, Inc.*, 700 S. W. 2d 86, 88–89 (Mo. 1985), to reject appellant's contention that our decisions in *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306 (1950), and *Mennonite Board of Missions* v. *Adams*, 462 U. S. 791 (1983), required more than publication notice. 733 P. 2d 396 (1987). The Supreme Court reasoned that the function of notice in probate proceedings was not to " 'make a creditor a party to the proceeding' " but merely to " 'notif[y] him that he may become one if he wishes.' " *Id.*, at 400 (quoting *Estate of Busch, supra*, at 88). In addition, the court distinguished probate proceedings because they do not directly adjudicate the creditor's claims. 733 P. 2d, at 400–401. Finally, the court agreed with *Estate of Busch* that nonclaim statutes were self-executing statutes of limitations, because they "ac[t] to cut off potential claims against the decedent's estate by the passage of time," and accordingly do not require actual notice. 733 P. 2d, at 401. See also *Gibbs* v. *Estate of Dolan*, 146 Ill. App. 3d 203, 496 N. E. 2d 1126 (1986) (rejecting due process challenge to nonclaim statute); *Gano Farms, Inc.* v. *Estate of Kleweno*, 2 Kan. App. 2d 506, 582 P. 2d 742 (1978) (same); *Chalaby* v. *Driskell*, 237 Ore. 245, 390 P. 2d 632 (1964) (same); *William B. Tanner Co.* v. *Estate of Fessler*, 100 Wis. 2d 437, 302 N. W. 2d 414 (1981) (same); *New York Merchandise Co.* v. *Stout*, 43 Wash. 2d 825, 264 P. 2d 863 (1953)

(same). This conclusion conflicted with that reached by the Nevada Supreme Court in *Continental Insurance Co.* v. *Moseley*, 100 Nev. 337, 683 P. 2d 20 (1984), after our decision remanding the case for reconsideration in light of *Mennonite*, *supra*. 463 U. S. 1202 (1983). In *Moseley*, the Nevada Supreme Court held that in this context due process required "more than service by publication." 100 Nev., at 338, 683 P. 2d, at 21. We noted probable jurisdiction, 484 U. S. 813 (1987), and now reverse and remand.

## III

*Mullane* v. *Central Hanover Bank & Trust Co.*, *supra*, at 314, established that state action affecting property must generally be accompanied by notification of that action: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In the years since *Mullane* the Court has adhered to these principles, balancing the "interest of the State" and "the individual interest sought to be protected by the Fourteenth Amendment." *Ibid.* The focus is on the reasonableness of the balance, and, as *Mullane* itself made clear, whether a particular method of notice is reasonable depends on the particular circumstances.

The Court's most recent decision in this area is *Mennonite*, *supra*, which involved the sale of real property for delinquent taxes. State law provided for tax sales in certain circumstances and for a 2-year period following any such sale during which the owner or any lienholder could redeem the property. After expiration of the redemption period, the tax sale purchaser could apply for a deed. The property owner received actual notice of the tax sale and the redemption period. All other interested parties were given notice by publication. 462 U. S., at 792–794. In *Mennonite*, a mortgagee of property that had been sold and on which the re-

demption period had run complained that the State's failure to provide it with actual notice of these proceedings violated due process. The Court agreed, holding that "actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." *Id.*, at 800 (emphasis in original). Because the tax sale had "immediately and drastically diminishe[d] the value of [the mortgagee's] interest," *id.*, at 798, and because the mortgagee could have been identified through "reasonably diligent efforts," *id.*, at 798, n. 4, the Court concluded that due process required that the mortgagee be given actual notice.

Applying these principles to the case at hand leads to a similar result. Appellant's interest is an unsecured claim, a cause of action against the estate for an unpaid bill. Little doubt remains that such an intangible interest is property protected by the Fourteenth Amendment. As we wrote in *Logan* v. *Zimmerman Brush Co.*, 455 U. S. 422, 428 (1982), this question "was affirmatively settled by the *Mullane* case itself, where the Court held that a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause." In *Logan*, the Court held that a cause of action under Illinois' Fair Employment Practices Act was a protected property interest, and referred to the numerous other types of claims that the Court had previously recognized as deserving due process protections. See *id.*, at 429–431, and nn. 4–5. Appellant's claim, therefore, is properly considered a protected property interest.

The Fourteenth Amendment protects this interest, however, only from a deprivation by state action. Private use of state-sanctioned private remedies or procedures does not rise to the level of state action. See, *e. g.*, *Flagg Bros., Inc.* v. *Brooks*, 436 U. S. 149 (1978). Nor is the State's involvement in the mere running of a general statute of limitations

generally sufficient to implicate due process. See *Texaco, Inc.* v. *Short*, 454 U. S. 516 (1982). See also *Flagg Bros., Inc.* v. *Brooks, supra,* at 166. But when private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found. See, *e. g., Lugar* v. *Edmondson Oil Co.*, 457 U. S. 922 (1982); *Sniadach* v. *Family Finance Corp.*, 395 U. S. 337 (1969). The question here is whether the State's involvement with the nonclaim statute is substantial enough to implicate the Due Process Clause.

Appellee argues that it is not, contending that Oklahoma's nonclaim statute is a self-executing statute of limitations. Relying on this characterization, appellee then points to *Short, supra.* Appellee's reading of *Short* is correct—due process does not require that potential plaintiffs be given notice of the impending expiration of a period of limitations— but in our view, appellee's premise is not. Oklahoma's nonclaim statute is not a self-executing statute of limitations.

It is true that nonclaim statutes generally possess some attributes of statutes of limitations. They provide a specific time period within which particular types of claims must be filed and they bar claims presented after expiration of that deadline. Many of the state court decisions upholding nonclaim statutes against due process challenges have relied upon these features and concluded that they are properly viewed as statutes of limitations. See, *e. g., Estate of Busch* v. *Ferrell-Duncan Clinic, Inc.*, 700 S. W. 2d, at 89; *William B. Tanner Co.* v. *Estate of Fessler*, 100 Wis. 2d 437, 302 N. W. 2d 414 (1981).

As we noted in *Short*, however, it is the "self-executing feature" of a statute of limitations that makes *Mullane* and *Mennonite* inapposite. See 454 U. S., at 533, 536. The State's interest in a self-executing statute of limitations is in providing repose for potential defendants and in avoiding stale claims. The State has no role to play beyond enactment of the limitations period. While this enactment obvi-

ously is state action, the State's limited involvement in the running of the time period generally falls short of constituting the type of state action required to implicate the protections of the Due Process Clause.

Here, in contrast, there is significant state action. The probate court is intimately involved throughout, and without that involvement the time bar is never activated. The nonclaim statute becomes operative only after probate proceedings have been commenced in state court. The court must appoint the executor or executrix before notice, which triggers the time bar, can be given. Only after this court appointment is made does the statute provide for any notice; § 331 directs the executor or executrix to publish notice "immediately" after appointment. Indeed, in this case, the District Court reinforced the statutory command with an order expressly requiring appellee to "immediately give notice to creditors." The form of the order indicates that such orders are routine. Record 14. Finally, copies of the notice and an affidavit of publication must be filed with the court. § 332. It is only after all of these actions take place that the time period begins to run, and in every one of these actions, the court is intimately involved. This involvement is so pervasive and substantial that it must be considered state action subject to the restrictions of the Fourteenth Amendment.

Where the legal proceedings themselves trigger the time bar, even if those proceedings do not necessarily resolve the claim on its merits, the time bar lacks the self-executing feature that *Short* indicated was necessary to remove any due process problem. Rather, in such circumstances, due process is directly implicated and actual notice generally is required. Cf. *Mennonite*, 462 U. S., at 793–794 (tax sale proceedings trigger 2-year redemption period); *Logan* v. *Zimmerman Brush Co., supra,* at 433, 437 (claim barred if no hearing held 120 days after action commenced); *City of New York* v. *New York, N. H. & H. R. Co.,* 344 U. S. 293, 294 (1953) (bankruptcy proceedings trigger specific time pe-

riod in which creditors' claims must be filed). Our conclusion that the Oklahoma nonclaim statute is not a self-executing statute of limitations makes it unnecessary to consider appellant's argument that a 2-month period is somehow unconstitutionally short. See Tr. of Oral Arg. 22 (advocating constitutional requirement that the States provide at least one year). We also have no occasion to consider the proper characterization of nonclaim statutes that run from the date of death, and which generally provide for longer time periods, ranging from one to five years. See Falender, 63 N. C. L. Rev., at 667–669. In sum, the substantial involvement of the probate court throughout the process leaves little doubt that the running of Oklahoma's nonclaim statute is accompanied by sufficient government action to implicate the Due Process Clause.

Nor can there be any doubt that the nonclaim statute may "adversely affect" a protected property interest. In appellant's case, such an adverse effect is all too clear. The entire purpose and effect of the nonclaim statute is to regulate the timeliness of such claims and to forever bar untimely claims, and by virtue of the statute, the probate proceedings themselves have completely extinguished appellant's claim. Thus, it is irrelevant that the notice seeks only to advise creditors that they may become parties rather than that they are parties, for if they do not participate in the probate proceedings, the nonclaim statute terminates their property interests. It is not necessary for a proceeding to directly adjudicate the merits of a claim in order to "adversely affect" that interest. In *Mennonite* itself, the tax sale proceedings did not address the merits of the mortgagee's claim. Indeed, the tax sale did not even completely extinguish that claim, it merely "diminishe[d] the value" of the interest. 462 U. S., at 798. Yet the Court held that due process required that the mortgagee be given actual notice of the tax sale. See also *Memphis Light, Gas & Water Div.* v. *Craft,* 436 U. S. 1 (1978) (termination of utility service); *Schroeder* v. *City of New York,* 371 U. S. 208 (1962) (condemnation proceeding); *City of New*

*York* v. *New York, N. H. & H. R. Co., supra* (Bankruptcy Code's requirement of "reasonable notice" requires actual notice of deadline for filing claims).

In assessing the propriety of actual notice in this context consideration should be given to the practicalities of the situation and the effect that requiring actual notice may have on important state interests. *Mennonite, supra,* at 798–799; *Mullane,* 339 U. S., at 313–314. As the Court noted in *Mullane,* "[c]hance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper." *Id.,* at 315. Creditors, who have a strong interest in maintaining the integrity of their relationship with their debtors, are particularly unlikely to benefit from publication notice. As a class, creditors may not be aware of a debtor's death or of the institution of probate proceedings. Moreover, the executor or executrix will often be, as is the case here, a party with a beneficial interest in the estate. This could diminish an executor's or executrix's inclination to call attention to the potential expiration of a creditor's claim. There is thus a substantial practical need for actual notice in this setting.

At the same time, the State undeniably has a legitimate interest in the expeditious resolution of probate proceedings. Death transforms the decedent's legal relationships and a State could reasonably conclude that swift settlement of estates is so important that it calls for very short time deadlines for filing claims. As noted, the almost uniform practice is to establish such short deadlines, and to provide only publication notice. See, *e. g.,* Ariz. Rev. Stat. Ann. § 14–3801 (1975); Ark. Code Ann. § 28–50–101(a) (1987); Fla. Stat. § 733.701 (1987); Idaho Code § 15–3–803(a) (1979); Mo. Rev. Stat. § 473.360(1) (1986); Utah Code Ann. § 75–3–801 (1978). See also Uniform Probate Code § 3–801, 8 U. L. A. 351 (1983); Falender, at 660, n. 7 (collecting statutes). Providing actual notice to known or reasonably ascertainable creditors, however, is not inconsistent with the goals reflected in nonclaim statutes. Actual notice need not be inefficient or

burdensome. We have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice. See, e. g., *Mennonite*, 462 U. S., at 799, 800; *Greene* v. *Lindsey*, 456 U. S. 444, 455 (1982); *Mullane, supra*, at 319. In addition, *Mullane* disavowed any intent to require "impracticable and extended searches . . . in the name of due process." 339 U. S., at 317–318. As the Court indicated in *Mennonite*, all that the executor or executrix need do is make "reasonably diligent efforts," 462 U. S., at 798, n. 4, to uncover the identities of creditors. For creditors who are not "reasonably ascertainable," publication notice can suffice. Nor is everyone who may conceivably have a claim properly considered a creditor entitled to actual notice. Here, as in *Mullane*, it is reasonable to dispense with actual notice to those with mere "conjectural" claims. 339 U. S., at 317.

On balance then, a requirement of actual notice to known or reasonably ascertainable creditors is not so cumbersome as to unduly hinder the dispatch with which probate proceedings are conducted. Notice by mail is already routinely provided at several points in the probate process. In Oklahoma, for example, § 26 requires that "heirs, legatees, and devisees" be mailed notice of the initial hearing on the will. Accord, Uniform Probate Code § 3–403, 8 U. L. A. 274 (1983). Indeed, a few States already provide for actual notice in connection with short nonclaim statutes. See, e. g., Calif. Prob. Code Ann. §§ 9050, 9100 (West Supp. 1988); Nev. Rev. Stat. §§ 147.010, 155.010, 155.020 (1987); W. Va. Code §§ 44–2–2, 44–2–4 (1982). We do not believe that requiring adherence to such a standard will be so burdensome or impracticable as to warrant reliance on publication notice alone.

In analogous situations we have rejected similar arguments that a pressing need to proceed expeditiously justifies less than actual notice. For example, while we have recognized that in the bankruptcy context there is a need for prompt administration of claims, *United Savings Assn. of Texas* v. *Timbers of Inwood Forest Assoc., Ltd.*, 484 U. S.

365, 375–376 (1988), we also have required actual notice in bankruptcy proceedings. *Bank of Marin* v. *England,* 385 U. S. 99 (1966); *City of New York* v. *New York, N. H. & H. R. Co.,* 344 U. S. 293 (1953). See also *Mullane* v. *Central Hanover Bank & Trust Co., supra,* at 318–319 (trust proceedings). Probate proceedings are not so different in kind that a different result is required here.

Whether appellant's identity as a creditor was known or reasonably ascertainable by appellee cannot be answered on this record. Neither the Oklahoma Supreme Court nor the Court of Appeals nor the District Court considered the question. Appellee of course was aware that her husband endured a long stay at St. John Medical Center, but it is not clear that this awareness translates into a knowledge of appellant's claim. We therefore must remand the case for further proceedings to determine whether "reasonably diligent efforts," *Mennonite, supra,* at 798, n. 4, would have identified appellant and uncovered its claim. If appellant's identity was known or "reasonably ascertainable," then termination of appellant's claim without actual notice violated due process.

### IV

We hold that Oklahoma's nonclaim statute is not a self-executing statute of limitations. Rather, the statute operates in connection with Oklahoma's probate proceedings to "adversely affect" appellant's property interest. Thus, if appellant's identity as a creditor was known or "reasonably ascertainable," then the Due Process Clause requires that appellant be given "[n]otice by mail or other means as certain to ensure actual notice." *Mennonite, supra,* at 800. Accordingly, the judgment of the Oklahoma Supreme Court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE BLACKMUN concurs in the result.

CHIEF JUSTICE REHNQUIST, dissenting.

In *Texaco, Inc.* v. *Short*, 454 U. S. 516 (1982), the Court upheld against challenge under the Due Process Clause an Indiana statute providing that severed mineral interests which had not been used for a period of 20 years lapsed and reverted to the surface owner unless the mineral owner filed a statement of claim in the appropriate county office. In the present case Oklahoma has enacted a statute providing that a contractual claim against a decedent's estate is barred if not presented as a claim within two months of the publication of notice advising creditors of the commencement of probate proceedings. The Court holds the Oklahoma statute unconstitutional.

Obviously there is a great difference between the 20-year time limit in the Indiana statute and the 2-month time limit in the Oklahoma statute, but the Court does not rest the constitutional distinction between the cases on this fact. Instead, the constitutional distinction is premised on the absence in *Texaco, Inc.*, of the "significant state action" present in this case. In the words of the Court:

> "The nonclaim statute becomes operative only after probate proceedings have been commenced in state court. The court must appoint the executor or executrix before notice, which triggers the time bar, can be given. Only after this court appointment is made does the statute provide for any notice; § 331 directs the executor or executrix to publish notice 'immediately' after appointment." *Ante,* at 487.

Just why the due process implications of these two cases should turn upon the "activity" of the Oklahoma probate court is not made clear. Surely from the point of view of the claimant—for whom, after all, the Due Process Clause is designed to benefit—the difference between having the time bar to his claim activated by a notice published by a court-appointed executor, as it was here, and having the time bar

activated by acquisition of the mineral interest, as it was in Indiana, makes little if any difference.

The owner of a mineral interest in Indiana who neither made any use of it for 20 years nor filed a statement of claim, would lose a quiet title action brought in the Indiana courts against him by the surface owner because those courts would apply the 20-year statute of limitations. The appellant in the present case lost a suit in the Oklahoma courts because those courts applied the 2-month statute of limitations contained in the Oklahoma probate statute. Why there is "state action" in the latter case, but not in the former, remains a mystery which is in no way elucidated by the Court's opinion. The factual differences which the Court points out, showing that the probate court is "intimately involved" in the application of the Oklahoma nonclaim statute, seem to me trivial.

Probate proceedings have been traditionally uncontested and administrative, designed to transfer assets from someone who has died to his successors. Before making these transfers, probate codes universally require that the estate settle the debts of the decedent, and to do this it is necessary that claims against the estate be marshaled and proved. *Ante*, at 479–480. Once the debts of the estate are paid, the necessary steps can be taken to distribute the remainder of the property.

Occasionally there may be a disputed claim against the estate, which is then in most jurisdictions tried like any other civil suit. Occasionally there may be a dispute over the validity of the will, with a resultant will contest. Occasionally there may be objections to the account of the executor or the administrator, which are then in most jurisdictions heard and decided by the probate court. But by and large, the typical probate proceeding—and the one involved in the instant case seems to have followed that pattern—is uncontested, and the publication of notice to creditors simply shortens the otherwise applicable statute of limitations.

The "intimate involvement" of the probate court in the present case was entirely of an administrative nature.

Would this Court have struck down the Indiana mineral lapse statute involved in *Texaco, Inc.*, if that statute had provided—as an *additional* protection to mineral owners—that a state official should publish notice to all mineral owners of the effect of the operation of the lapse statute? I find it difficult to believe that would be the case, and yet the thrust of the Court's reasoning today points in that direction. Virtually meaningless state involvement, or lack of it, rather than the effect of the statute in question on the rights of the party whose claim is cut off, is held dispositive.

The Court observes that in Oklahoma, it is the court-ordered publication of notice that triggers the running of the statute of limitations. This judicial involvement, the Court concludes, is inconsistent with the "self-executing feature," of the time bar in *Texaco, Inc. Ante*, at 487. This reading of the term "self-executing" is, I believe, out of context and contrary to common sense. That term refers only to the absence of a judicial or other determination that *itself* extinguishes the claimant's rights. This is made clear by the *Texaco, Inc.*, Court's juxtaposition of "the self-executing feature of the [Indiana] statute and a subsequent judicial determination that a particular lapse did in fact occur." 454 U. S., at 533. Certainly the Oklahoma provision is more like the former than the latter, and there is no reason to conclude that the perfunctory administrative involvement of the Oklahoma probate court triggers a greater level of due process protection.

Appellant also claims that the 2-month period provided by Oklahoma law, even if deemed to be a statute of limitations, is too short to afford due process. The Court does not reach that question, and neither do I.