IN RE GUARDIANSHIP OF BISSMEYER.

(No. C-870783—Decided August 31, 1988.)

*Dinsmore & Shohl, Lawrence A. Kane, Jr.* and *Kenneth S. Resnick,* for appellant.

*Brown, Lippert, Heile & Evans, Marquette D. Evans, C. Donald Heile* and *Richard H. Lippert,* for appellee.

*Per Curiam.* This cause came on to be heard upon the appeal from the Court of Common Pleas, Probate Division, of Hamilton County.

On May 15, 1987, appellee Roger Bissmeyer and Fifth Third Bank of Cincinnati filed applications for appointment of a guardian over the person and estate, respectively, of James Bissmeyer. The probate court granted the applications on May 26, 1987, after a hearing for which no transcript is part of the record certified to this court. Appellant William A. Bissmeyer, Jr. filed a motion to set aside the appointments, and on October 13, 1987, after a hearing for which again no transcript is provided, the probate court overruled the motion.

The ward, James Bissmeyer, is a moderately retarded adult who resides in Hamilton County. His siblings are appellant William Bissmeyer (of Indianapolis, Indiana), appellee Roger Bissmeyer (of Dublin, Ohio), Carol Graham (of Charlotte, North Carolina) and Claire Tiberio (of Zanesville, Ohio). Both parents are deceased.

Under Ohio law, notice must be served only upon the ward's next of kin known to reside in the county in which the application to appoint the guardian is made.[1] William did not receive notice of the hearing on the guardianship applications, but, despite the absence of statutory entitlement, Carol and Claire did. To support his assignment of error that the probate court erred in overruling his motion to set aside the entry, William argues that the notice provision of R.C. 2111.04(B)(2) offends the Due Process Clause, Equal Protection Clause and Privileges and Immunities Clause of the Fourteenth Amendment to the United States Constitution. The assignment of error is overruled for the reasons which follow.

The safeguards of procedural due process apply to property and liberty interests. Deprivation by adjudication of life, liberty, or property requires notice and a hearing. *Bd. of Regents of State Colleges* v. *Roth* (1972), 408 U.S. 564; *Mullane* v. *Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306.

The Fourteenth Amendment embraces broad concepts of property and liberty. A legitimate claim of entitlement underpins a property interest contemplated in the amendment. Liberty includes more than freedom from bodily restraint; it generally encompasses freedoms essential to the orderly pursuit of happiness. *Roth, supra,* at 572. Thus, the narrow notice provision of R.C. 2111.04(B)(2) may be held to offend the Due Process Clause of the Fourteenth Amendment only if in constitutional jurisprudence one's desire to be heard upon another's application for guardianship of one's next of kin amounts to a property or liberty interest.

Appellant argues that he possesses the requisite interests entitling him to notice and correctly observes that the Supreme Court held notice by publication insufficient with respect to known trust beneficiaries of known addresses in *Mullane, supra.* He analogizes *Mullane* to his position, which is that he is an interested person of known address, and therefore actual notice is his due. Unlike appellant, trust beneficiaries plainly have legitimate claims of entitlement to which procedural due process affords protection. *Cf. Tulsa Professional Collection Services, Inc.* v. *Pope* (1988), 485 U.S. 478 (holding that under *Mullane, supra,* actual notice must be sent to readily ascertainable creditors of an estate). Appellant may have a real concern in his brother's well-being, but such a concern cannot be termed a property interest under the Fourteenth Amendment.[2]

Appellant does not assert that his

---

[1] The relevant portion of R.C. 2111.04 reads:

"(B) In the appointment of the guardian of an incompetent, notice shall be served:

"(1) Upon the person for whom appointment is sought by personal service;

"(2) Upon the next of kin of the person for whom appointment is sought known to reside in the county in which application is made."

[2] Generally, a person does not have standing to assert the constitutional rights of a third person. *Warth* v. *Seldin* (1975), 422 U.S. 490. Even so, appellant urges alternatively that, because his brother possesses a right to be heard yet cannot articulately respond to the application, appellant should be permitted to argue on his brother's behalf, citing *Griswold* v. *Connecticut* (1965), 381 U.S. 479. Unlike *Griswold,* the case *sub judice* does not involve state regulation of communication in a confidential, professional relationship. Though it is true that the ward's interests are at stake and he cannot alone respond, by statute he is entitled to representation by an attorney. R.C. 2111.02. With the absence of the transcript, we will assume that the ward was represented because we presume

personal liability is imperiled but rather that Ohio law confers "interested party" status upon family members and gives them the right to notice. Our attention is directed to *In re Guardianship of Tillman* (1955), 100 Ohio App. 291, 60 O.O. 254, 136 N.E. 2d 291, in which the ward's daughter excepted to a fiduciary accounting of the ward's estate. The court of appeals held that under R.C. 2111.04(B)(2), the daughter was a next of kin, and as such she was an interested person who could except to the accounting under R.C. 2109.33. *Tillman* did not address a constitutional challenge, and plainly a statutory right in an interest for a limited purpose does not engender a similar constitutional right for all purposes.[3] Appellant has not shown a property or liberty interest that triggers procedural due process.

The Fourteenth Amendment explicitly declares that no state shall deny to any person equal protection of the laws. A statute classifying people for the purpose of allocating burdens or benefits will be upheld if the classification is rationally related to the governmental purpose.[4]

Enactment endows a statute with a strong presumption of constitutionality. *State, ex rel. Poe,* v. *Jones* (1894), 51 Ohio St. 492, 37 N.E. 945. Appellant contends that the notice provision of R.C. 2111.04 is so arbitrary and unreasonable that the presumption is overcome. However, the statute requires notice for next of kin, in closest proximity to the ward, one of whom is likely to be best able to serve as guardian. A further justification might be an expeditious appointment so that a person who is mentally incompetent does not long remain unprotected and without means to conserve self and estate. These justifications sufficiently demonstrate a rational relationship between the discrimination and the intention of guarding the ward. For appellant, the lack of notice may well make tracking a case in Hamilton County difficult. Nevertheless, the state of Ohio does not deny appellant access to its courts, and prac-

---

regularity in the proceedings below. *Shoemaker* v. *Standard Oil Co.* (1939), 135 Ohio St. 262, 14 O.O. 116, 20 N.E. 2d 520. Consequently, no basis exists to allow appellant to assert the ward's rights.

[3] *Tillman* does not indicate that the daughter resided outside the county in which application was made. Consonant with *Tillman,* should appellant's motivation be conservation of his brother's property, then he may be heard by exceptions to accountings of his brother's estate. Appellant should also note that guardians must perform their duties in accordance with statutory standards and court orders (R.C. 2109.02), which diminishes any objection to who will be guardians. Failure to discharge those duties properly may subject the guardians to numerous sanctions. See R.C. Chapter 2109.

[4] Appellant would have us apply the test of strict scrutiny and cites in support *Memorial Hospital* v. *Maricopa County* (1974), 415 U.S. 250. In that case, the Supreme Court considered an Arizona statute that required one year of residence in county as a prerequisite for an indigent to gain admission to the county hospital for nonemergency care at the county's expense. The court found that the residence requirement punitively impinged upon the right to interstate travel, which is a fundamental right, and justified application of strict scrutiny. See *Memorial Hospital, supra,* at 262. In contrast, the notice of R.C. 2111.04 does not affect appellant's fundamental rights; certainly, he may freely travel to Ohio and appear in Ohio's courts to the extent permitted by law. Appellant cannot persuasively argue that he is a member of a suspect classification. We thus reject the contention that the strict scrutiny test should be applied to R.C. 2111.04(B)(2).

tical inconvenience will not warrant the conclusion that this statute violates the Equal Protection Clause.

"Only with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally." *Baldwin* v. *Fish & Game Comm. of Montana* (1978), 436 U.S. 371, 383. The Supreme Court's description invokes fundamental rights. Generally, the court has applied the Privileges and Immunities Clause to cases in which states have sought to protect resources or regulate common callings. *United Bldg. and Constr. Trades Council* v. *Mayor & Council of Camden* (1984), 465 U.S. 208, 218. The case at bar does not concern subject matter ordinarily at issue in a privileges-and-immunities case.

Essential to using the Privileges and Immunities Clause to overturn a statute bearing on a fundamental right are negative responses to two questions: (1) whether the statute is justifiable for reasons other than citizenship; and (2) whether the degree of discrimination closely relates to the independent reasons. *Toomer* v. *Witsell* (1948), 334 U.S. 385; see *United Bldg., supra,* at 218. Constitutional jurisprudence recognizes that states possess considerable discretion in addressing local problems. *Toomer, supra,* at 396. As to the first part of the inquiry, assuming that a fundamental right was affected, we determine that the same two reasons supporting R.C. 2111.04(B)(2) under equal-protection analysis legitimize the statute under the Privileges and Immunities Clause. Additionally, the small degree of discrimination plainly meshes with the reasons. Next of kin from foreign states are placed in the same position as next of kin living in Ohio but outside the county in which application is made.[5] Even if we assume that a fundamental right is at stake, application of the test to the statute and facts in the case *sub judice* does not reveal an affront to the Privileges and Immunities Clause. At bottom, the provision does not trammel any fundamental right which appellant possesses and is constitutional within full application of the Fourteenth Amendment.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

BLACK, P.J., DOAN and KLUSMEIER, JJ., concur.

---

[5] In *United Bldg., supra,* the Supreme Court held that a municipal ordinance, which burdened out-of-state residents in the same manner as in-state residents who lived within the municipality, was not immune from the strictures of the Privileges and Immunities Clause. A fair reading of the case yields the conclusion that a state law dealing with residence by county is similarly governed. Nonetheless, comparison of effects is still a relevant factor in evaluating the qualitative degree of discrimination.