609 So.2d 98 (1992)
Jane A. JONES, Appellant,
v.
SUN BANK/MIAMI, N.A., and Howard F. Ullman, as Co-Administrator of the Estate of Richard E. Thomi, Deceased, Appellees.
No. 91-2847.
District Court of Appeal of Florida, Third District.
November 24, 1992.
*99 Spriggs & Johnson and Rick Johnson, Friedlander & Mattox, Tallahassee, for appellant.
Ullman & Ullman and Steven J. Glueck, North Miami Beach, Cooper & Wolfe and Sharon Wolfe, Miami, for appellees.
Before BARKDULL, HUBBART and FERGUSON, JJ.
BARKDULL, Judge.
This is an appeal from a final order striking the statement of claim filed by Jane A. Jones against the estate of Richard E. Thoni. Said order reads in part as follows:
"This cause came before the Court for hearing on the Motion of Co-Administrators of the Estate of RICHARD E. THONI, Deceased, to Strike Statement of Claim of Jane A. Jones as Untimely. The Court heard argument of counsel, testimony of the witnesses, both live and by deposition, examined the documents admitted into evidence, reviewed the Trial Memoranda submitted by the Co-Administrators and the Claimant and is otherwise fully advised in the premises and proceedings. Accordingly, the Court makes the following finding of facts and conclusions of law:

FINDINGS OF FACT
"1. ON OR ABOUT DECEMBER 16, 1985, RICHARD E. THONI ("the Deceased") entered into a Contract for Sale and Purchase with Gold Key Development Company, Inc. for the sale of a parcel of property, together with improvements in the nature of a gasoline station, in Panama City, Florida, ("The Parcel").
"2. On March 10, 1986, the transaction closed and The Deceased, by Warranty Deed, conveyed The Parcel to JANE A. JONES (hereinafter referred to as "Claimant").
"3. Claimant, by her own volition chose not to be represented by legal counsel in connection with the transaction and, instead, allowed the title company to undertake the legal responsibility for the settlement and closing of the transaction.
"4. Soon after the closing, Claimant and The Deceased had one telephone conversation, wherein Claimant inquired regarding the well and pump on the Premises.
"5. The next contact between Claimant and the Deceased occurred on or about June 9, 1986, when The Deceased mailed a letter to Claimant, which Claimant received, indicating that the Deceased and the Department of Environmental Regulation had entered into a consent judgment in 1981 regarding procedures to be followed to avoid delivery of the wrong type of gasoline or fuel into consumers' vehicles and that the consent judgment required subsequent owners to be notified and to implement the procedure. (Claimant's Exhibit 7).
"6. There was no further contact between Claimant and the Deceased or anyone on the Deceased's behalf until April, 1989 when Claimant telephoned the Deceased, spoke to Dorothy Thoni and advised that she needed to speak to the Deceased to determine whether there were any underground tanks on the Premises.
*100 "7. The Deceased did not return the telephone call and consequently, Claimant placed a second telephone call to the Thoni residence and advised the gentleman who answered the telephone that she needed to speak to the Deceased to determine whether there were any underground tanks at the Premises.
"8. Not receiving a return telephone call, Claimant sent a letter to the Deceased during April, 1989, advising that she had purchased the Premises in 1986 and that she needed to know whether there were any underground tanks on the premises. (Claimant's Exhibit 6).
"9. Dorothy Thoni, on behalf of the Deceased, typed on the bottom of the April, 1989 letter: `All the tanks were aboveground. Richard E. Thoni, 4/28/89.' The response was mailed to and received by the Claimant.
"10. While there was no competent testimony or evidence supporting Claimant's allegation of environmental contamination at the Premises, Claimant testified that beginning no later than April, 1989, she believed that there was environmental contamination at the premises.
"11. Dorothy Thoni by deposition, testified that there was no known contamination at the Premises at the time of sale to the Claimant.
"12. Claimant testified that she did not have the Premises tested for contamination prior to the closing.
"13. Notwithstanding that Claimant, at all times relevant herein, had both the address and telephone number of the Deceased and Dorothy Thoni, at no time did Claimant advise, attempt to advise or even intimate to the Deceased or anyone on his behalf, her belief that there was environmental contamination at the premises for which she intended to hold the Deceased liable.
"14. The Deceased, RICHARD E. THONI, died on August 15, 1989.
"15. Notice of Administration was first published on August 29, 1989 and consequently the claims bar date was November 29, 1989.
"16. On or about April 28, 1990 Dorothy Thoni was served with a Summons and Complaint in an action filed by the Claimant against the Deceased in the 14th Circuit Court of Bay County, Florida, on or about March 15, 1990, seeking damages for breach of contract, breach of warranties and fraud for alleged environmental contamination to the premises. (Exhibit to Statement of Claim of Jane Jones.)
"17. On or about May 21, 1990, after learning that RICHARD E. THONI was deceased, Claimant filed a Statement of Claim with this Court.
"18. The Co-Administrators served their Motion to Strike Statement of Claim of Jane A. Jones on January 14, 1991.
"19. At no time prior to or at the hearing on the Motion to Strike, did the Claimant file a written motion for an order enlarging Claimant's time to file her Statement of Claim, nor has Claimant filed a written reply to the Motion to Strike Claim.
"20. The Claimant also failed to move ore tenus at the hearing on the Motion to Strike, for an order enlarging time to file her Statement of Claim.

CONCLUSIONS OF LAW
"1. Sec. 733.702 F.S. provides that a claim against a decedent is barred unless a statement of claim is filed within three (3) months of the date of the first publication of the Notice of Administration, required pursuant to Sec. 733.212 F.S.
"2. The Co-Administrators' Motion to Strike, together with a review the record demonstrate that the Statement of Claim filed by Claimant is untimely as it was filed subsequent to the claims bar date of November 29, 1989 which is three (3) months following the August 29, 1989 date of first publication of the Notice of Administration in this estate.
"3. The Court has the authority to extend the time for filing claims past the bar date in accordance with Sec. 733.702(3).
"4. As the Co-Administrators demonstrated that the Claim was untimely, the burden shifted to the Claimant to seek an *101 order enlarging the time to file her claim, either by filing a written motion or a written reply to the Motion to Strike. Barnett Bank of Palm Beach County v. Estate of Read, 493 So.2d 447 (Fla. 1986) citing Picchione v. Asti, 354 So.2d 954 (Fla. 3d DCA 1978).
"5. The Co-Administrators' moved ore tenus for the Court to dispense with any further hearing and for the entry of an order that the claim was time-barred due to the failure of the Claimant to file a motion or response requesting an enlargement of time to file her claim. The Court, having reserved decision on the Co-Administrator's motion, conducted a full evidentiary hearing on Claimant's position that she was a "known or reasonably ascertainable creditor" entitled to actual notice and not solely notice by publication of the claims period.
"6. Based upon all of the evidence before the Court, the Court concludes that Claimant was not "a known or reasonably ascertainable creditor" as contemplated by the above cited statute and case law.
"7. At no time prior to service of Claimant's complaint in the Bay County action did Claimant ever communicate to the Deceased or anyone on his behalf that Claimant had a dispute or would claim a right to damages or other legal remedy for the alleged environmental contamination to the Parcel. The two telephone calls to the Thoni residence and the April, 1989 request for information regarding underground tanks, by Claimant's own testimony were not notifications of any dispute, but only requests for information. Claimant admitted that the April, 1989 letter was clearly not a claim nor did it indicate that there was a dispute, by testifying, "Obviously, that's not a claim." Claimant further testified that she was only in the process of gathering information when she made the calls and wrote the letter, to determine the extent of the claim she would be making against the Deceased. (Transcript of excerpt of hearing testimony of Jane Jones, p. 48, lines 5-21.) Moreover, Claimant testified that other than asking Dorothy Thoni about the underground tanks, Claimant never had any discussions with Dorothy Thoni regarding the condition of the property. (Transcript of excerpt of hearing testimony of Jane Jones, p. 50, lines 9-13.)
"8. Claimant elicited testimony from the Co-Administrator to the effect that a substantial percentage of gasoline station sites still held by the Estate in Florida had some level of environmental contamination. From this testimony, Claimant argued that the Co-Administrators should have concluded that gasoline station sites which had been sold by the Deceased during the five years prior to his death probably were contaminated.
"9. The Court rejects Claimant's position that a duty was created obligating the Co-Administrators to give actual notice of the death of Deceased and the procedure for filing claims, to all purchasers of the Deceased's Florida gasoline station sites, including Claimant, where such respective purchasers never communicated to the Deceased any dispute or claim in connection with their purchases.
"10. Claimant's further argument that Chapter 376 F.S. (1986), and more specifically Sec. 376.313 F.S. (1986) which creates a private right of action for environmental contamination and a strict liability standard of proof for a plaintiff bringing suit thereunder, excuses her from complying with the requirements under the Florida Probate Code and Rules to timely file a Statement of Claim, or entitles her to anything more than notice by publication, also is misplaced. Whether Claimant's claim is based upon the civil remedy created under Ch. 376. F.S., or the causes of action set forth in her Complaint and Statement of Claim which seek damages for breach of contract, breach of warranties and fraud, is not relevant. The standard of proof in any suit arising out of the transaction, while making the plaintiff's burden easier or more difficult to meet, does not alter the fact that Claimant simply failed to take any action to meet her crucial burden to raise her status from that of "conjectural claimant" to "known or reasonably ascertainable creditor". Consequently, the statute has no relevance to these proceedings.
*102 "11. Moreover, Claimant would have this Court create a duty and place a burden on a personal representative or administrator that goes well beyond the holding and requirements of [Tulsa Professional Collection Services, Inc. v.] Pope, supra [485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988)] and Florida case law and statutes which implement the Pope decision, and redefine the standards set forth therein.
"12. Pope arose out of a hospital claim for payment of charges for the decedent's lengthy last illness. The personal representative was the decedent's wife. The U.S. Supreme Court was presented with this set of facts which demonstrate that the hospital might well have been known to the personal representative or reasonably ascertainable by her as a creditor. The Court held unconstitutional, as a violation of due process, the Oklahoma statute which did not require service, other than service by publication, of notice of administration upon creditors of a decedent whose identities as `creditors' were known or reasonably ascertainable by the personal representative.
"13. The U.S. Supreme Court, distinguished between those entitled to actual notice and those as to whom notice by publication is sufficient. Citing Mullane vs. Central Hanover Bank and Trust Company, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Court stated:
In addition, Mullane disavowed any intent to require "impracticable and extended searches ... in the name of due process" (citation omitted) as the Court indicated in Mennonite (Mennonite Board of Missions vs. Adams, 462 [U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983)]) (Citation added), all that the Executor or Executrix need do is make `reasonably diligent efforts' (citation omitted) to uncover the identities of creditors. For creditors who are not `reasonably ascertainable,' publication notice can suffice. Nor is everyone who may conceivably have a claim properly considered a creditor entitled to actual notice. Here, as in Mullane, it is reasonable to dispense with actual notice to those with mere `conjectural' claims. (citation omitted) (emphasis added).
"14. In Mullane, supra, the Supreme Court, in determining the extent of diligence required to discover creditors, stated:
Nor do we consider it unreasonable for the State to dispense with more certain notice to those beneficiaries whose interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge of the common trustee. Mullane, supra 339 U.S., at 317, 70 S.Ct. at 659.
"15. In Pope, the Supreme Court did not find, as a matter of law, that decedent's wife, who served as personal representative and knew of the hospital stay, actually knew or reasonably could have ascertained that the hospital was a creditor. Rather, the Supreme Court remanded the case to the Oklahoma court to make a two-fold factual determination of whether "reasonably diligent efforts (citation omitted) would have identified appellant and uncovered its claim." 485 U.S. at 491, 108 S.Ct. at 1348.
"16. In the case before this Court, as the Co-Administrator testified, Claimant's identity as a purchaser of the Parcel and her address may have been reasonably ascertainable. However, her `claim' was not.
"17. It is not the duty of the Co-Administrators to have speculated and conjectured that Claimant might possibly have a claim against the estate. The burden rested with the Claimant, during the four years between the date that she purchased the property on March 10, 1986, and the dates she served her lawsuit on April 28, 1990 and filed her Statement of Claim on May 21, 1990, to take some affirmative step to notify the Deceased of the existence of a claim or dispute. The Claimant failed in this burden, thereby failing to change her status from a `conjectural claimant' to a `reasonably ascertainable creditor'.
"18. This Court does not interpret Pope to require that a personal representative determine the identities of persons or entities with whom a decedent had business dealings or other transactions during a given *103 number of years prior to death and to serve a Notice of Administration upon each one merely because such person might possibly have some uncommunicated dissatisfaction with the matter. As to those persons, notice by publication is sufficient to afford due process.

* * *
That the Statement of Claim filed by Jane A. Jones on or about May 21, 1990, having been filed subsequent to the claims bar date of November 29, 1989, be and hereby is stricken with prejudice and her claim is forever barred."
We affirm. The trial court should have stricken the claim as being untimely when there was no motion for enlargement. Fla.R.P. & G.P. 5.495; Thames v. Jackson, 598 So.2d 121, 123 (Fla. 1st 1992); Hill v. HCA Health Serv. of Fla., Inc., 582 So.2d 701 (Fla. 1st DCA 1991). There was no abuse of discretion in the trial court finding that the claimant was not a "known or reasonably ascertainable creditor". In re Estate of Vickery, 564 So.2d 555, 558 (Fla. 4th DCA 1990); Public Health Trust v. Estate of Jara, 526 So.2d 745 (Fla. 3d DCA 1988); North Shore Medical Ctr., Inc. v. Szilvassy, 526 So.2d 744 (Fla. 3d DCA 1988). Finally, the Pollution Control Act was never pled, and therefore, was not applicable. Even if the Act was applicable, however, it has no specific limitation period. Consequently, the Act would be subject to the general statute of limitations, section 95.11, Fla. Stat., which is further limited by the specific provisions of section 733.702, Fla. Stat., of the probate code. See, e.g., Velzy v. Estate of Miller, 502 So.2d 1297, 1299 (Fla. 2d DCA 1987) ("Even if appellant's action had not been barred by section 95.11(3)(i) and (j), [the action] is barred by her failure to file a claim ... as required by section 733.702."); Wall v. Johnson, 78 So.2d 371 (Fla. 1955). Therefore, for the above reasons the final order striking the claim of Jane A. Jones be and the same is hereby affirmed.
Affirmed.