839 So.2d 876 (2003)
Mark B. STRULOWITZ, as Personal Representative of the Estate of Harold Strulowitz, Appellant,
v.
The CADLE COMPANY, II, INC., Appellee.
No. 4D02-784.
District Court of Appeal of Florida, Fourth District.
March 12, 2003.
*877 Cindy L. Ebenfeld and Ralph O. Anderson of Hicks, Anderson & Kneale, P.A., Hollywood, and Gregory A. Ebenfeld of Gregory A. Ebenfeld, P.A., Hollywood, for appellant.
Scott R. Bugay of Lanza & Bugay, P.A., Miami, for appellee.
TAYLOR, J.
Mark Strulowitz, the personal representative of the estate of his father, Harold Strulowitz, appeals from a probate court order denying his petition to strike an untimely claim filed against the estate by appellee, The Cadle Company II, Inc. ("Cadle"). Because we find no abuse of discretion in the court's determination that Cadle was a known or reasonably ascertainable creditor, entitled to notice of administration, we affirm.
Harold Strulowitz died on May 17, 2000. His son Mark was appointed personal representative of his estate. On August 21, 2000, the personal representative published a Notice of Administration. The statutory claims-bar date ran on November 20, 2000.
On or about January 18, 2001, the personal representative received a phone call from Rich Cupp, an account officer for Cadle, regarding a debt the deceased allegedly owed the company. The claim was based on a Joint Stipulation of Settlement entered into between Cadle and Harold and Phyllis Strulowitz in 1994.[1] The settlement resolved a lawsuit filed by Cadle to collect on a promissory note. Pursuant to the settlement, which adjusted the beginning principal balance on the note from $73,750 to $56,500, the Strulowitzes were to pay Cadle in quarterly payments for a period of six years. On June 1, 2000, the remaining balance on principal was due.
The personal representative advised Cupp that he had no record of any such debt and requested documentation of the debt and a payment history. Cupp sent the requested information and, on February 5, 2001, he received a letter from the attorney for the personal representative explaining that Cadle's claim was time-barred because it was not filed within three months of the first date of publication. On February 16, 2001, Cadle filed a Petition for Leave to File Claim and a statement of claim for $26,071.88 plus interest.
*878 The personal representative filed a Petition for Order Striking Untimely Filed Claim, along with a supporting affidavit. In his affidavit, the personal representative stated that Cadle was not known or reasonably ascertainable prior to the expiration of the time for filing claims in the estate. He described in detail the steps he took to locate creditors of the estate:
Upon being appointed the personal representative of my father's estate, I made a diligent search to determine the name and addresses of creditors of the decedent who were reasonably ascertainable and served on those creditors a copy of the Notice within three months after the first publication of the Notice. There were approximately 19 creditors to whom I furnished actual notice. The Cadle Company was not one of those creditors.

* * *
My diligent search included the following: I went through all my father's personal and business files. I went through the decedent's checkbook for the year 2000. I spoke with my brother regarding my father's debts. I went through my father's bills and correspondence to determine creditors.
The personal representative further stated that he first learned about Cadle when he received their phone call on January 18, 2001. He denied any knowledge of Cadle, the lawsuit, or the settlement; neither his father's personal or business files contained a copy of the settlement or an order approving such settlement. He also stated that his father's personal and business checkbooks were hand-written and, for the most part, illegible.
The probate court referred the matter to an attorney ad litem, who interviewed the parties and issued a report. The attorney ad litem concluded that Cadle was a reasonably ascertainable creditor entitled to actual notice of administration. In his report, the attorney ad litem acknowledged the difficulty he had tracking down the company and the debt. He noted that Cadle did not send a payment book to the decedent, record the settlement, or send out a delinquency notice after failing to receive the June 2000 payment. Among the decedent's bank records were a $1500 check dated March 11, 2000 from the decedent to "The Cadle C? ? II (illegible)" and a check dated December 14, 1999 for the same amount to "Cadle II Company." He noticed further that there were four checks written to Cadle for $1500 during the year preceding the decedent's death. He said that all but the March 11, 2000 check were legible.
Recounting the steps he took to find Cadle, he stated the following:
I checked the local Broward County phone book to find a listing for Cadle. I was unsuccessful so I called information and I was told that there was no listing for Cadle in the State of Florida. I asked about other states and I was told that I would have to call every state in the union. This alone I believe was impracticable for a personal representative to act on.

* * *
I made one final query when I called the operator to learn if a toll free number for Cadle existed. The operator provided [me] with a toll free number for Cadle.

* * *
I called the number and read the number listed on the bottom of the check. The individual could not locate the number and asked me if it was an old account. She then asked me for a Social Security number and I gave her the decedent's social security number. She *879 found the account and transferred my call.
The attorney at litem observed that a personal representative is "not expected nor ... required to make impractical and extended searches when attempting to identify creditors of an estate." Yet, based on his investigation, the attorney ad litem concluded that the personal representative could have conducted a more diligent search and discovered that Cadle was a creditor of the estate. He believed that a more extensive review of the decedent's bank statements or check books would have led the personal representative to Cadle.
After a failed attempt at mediation, the probate court held an evidentiary hearing on October 18, 2001. The court concluded that, based on "the totality of the circumstances of this case", "the Cadle Company is a creditor of this estate and a claim has been filed." It then entered an order denying the petition to strike Cadle's claim. The personal representative appealed the order, arguing that it should be reversed because Cadle was not a known or reasonably ascertainable creditor of the estate.
We review the probate court's denial of the petition to strike Cadle's claim for an abuse of discretion. See In re Estate of Ortolano, 766 So.2d 330, 332 (Fla. 4th DCA 2000)(stating that "[t]he standard of review of an order striking a claim against an estate for being untimely filed is whether the trial court abused its discretion"); see also In re Estate of Vickery, 564 So.2d 555, 558 (Fla. 4th DCA 1990)(holding that the trial court did not abuse its discretion in striking untimely claim against the estate); Jones v. Sun Bank/Miami N.A., 609 So.2d 98, 103 (Fla. 3d DCA 1992)(holding that there was no abuse of discretion in the trial court finding that the claimant was not a known or reasonably ascertainable creditor).
A creditor who fails to file its claim within the applicable period set forth in section 733.702(1), Florida Statutes (2000)[2] cannot recover against the estate unless the creditor obtains an extension of time for filing the claim. Section 733.702(3), Florida Statutes (2000), provides that the extension may be granted only upon the grounds of fraud, estoppel, or insufficient notice of the claims period.
Here, Cadle sought an extension based on its claim of insufficient notice. The only creditors entitled to actual notice of administration are those who are known or reasonably ascertainable. Pursuant to section 733.212(4)(a), Florida Statutes (2000):
The personal representative shall promptly make a diligent search to determine the names and addresses of creditors of the decedent who are reasonably ascertainable and shall serve on those creditors a copy of the notice within 3 months after the first publication of the notice.... Impracticable and extended searches are not required.
Therefore, a reasonably ascertainable creditor is one who can be determined by the personal representative through a diligent search. As stated in Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), "all that the executor or executrix *880 need do is make `reasonably diligent efforts' to uncover the identities of creditors." Id. at 490, 108 S.Ct. 1340 (citations omitted).
When the identity of a creditor is known or reasonably ascertainable, due process requires that the creditor be given notice of the commencement of probate proceedings by mail or by such other means as is certain to ensure actual notice. See Pope, 485 U.S. at 491, 108 S.Ct. 1340. "For creditors who are not `reasonably ascertainable,' publication notice can suffice." Id. Here, it is undisputed that Cadle was not a known creditor. Thus, whether Cadle was entitled to actual, instead of mere publication notice, depends upon whether it was a reasonably ascertainable creditor.
Cadle urges us to affirm the probate court's finding that it was a reasonably ascertainable creditor. It argues that a diligent search by the personal representative of the decedent's financial records would have determined that Cadle was a creditor. According to Cadle, a review of the deceased's checks, bank statements, check stubs and/or check registers would have shown payments to Cadle on a quarterly basis since 1994. Within the one year preceding his death on May 17, 2000, the deceased wrote four checks to Cadle: Number 3298 on June 14, 1999; Number 3330 on September 13,1999; Number 3353 on December 14, 1999, and Number 3373 on March 11, 2000. Each check was for $1500.00. As the attorney ad litem noted in his report, the words "Cadle Company II" were legible on all the checks, except for the March 11, 2000 check.
Further, Cadle calls attention to the personal representative's acknowledgment that he did not look at any of the decedent's cancelled checks and that he reviewed only his checkbook for the year 2000. This covered a period of about seventeen weeks before his death. Cadle contends that a prudent personal representative's search would have gone further and shown a pattern of checks in the amount of $1,500.00 to the company.
The personal representative counters that he conducted a diligent search for creditors and Cadle was neither known nor reasonably ascertainable. He maintains that his first knowledge of the debt came from Cadle's phone call in January 2001. At that point, he had not received any bills, letters, payment books, phone calls, or correspondence of any kind concerning an outstanding debt to the company. The decedent's personal and business files did not contain a copy of the Joint Stipulation of Settlement; nor did his files contain the order approving the settlement. Contrary to the report of the attorney ad litem, he argues, there was nothing among the decedent's personal and business records that would have revealed Cadle's claim without "a handwriting interpreter and detective." Further, he submits, there was no way of knowing whether those checks represented an outstanding debt or simply a store purchase. As the Jones court explained, it is not just the claimant's identity but its "claim" that must be reasonably ascertainable. Jones, 609 So.2d at 102. The personal representative has no duty to speculate and conjecture that someone might possibly have a claim against the estate. Id.
The personal representative asserts that requiring the administrator of an estate to locate and study all checks written by the decedent during the year preceding his or her death and to chart out patterns in the amounts paid, where no bill, phone call, or correspondence reflects an outstanding debt, places a greater burden on the personal representative than what is required by law. He reminds us that section 733.212(4)(a) does not require impracticable and extended searches. Additionally, *881 the personal representative argues that there is no legal authority requiring him to review any check stubs at all, let alone those beyond seventeen weeks. In so arguing, the personal representative highlights a concern that makes his appeal problematic: the absence of any written rules or guidelines on specific steps that an estate administrator must take during the course of a diligent search.[3]
Based on testimony taken at the evidentiary hearing and "the totality of the circumstances of this case," the trial court found that Cadle was a reasonably ascertainable creditor. The court thus determined that the personal representative's search in this case was inadequate. As we explained earlier, this determination is reviewed by an abuse of discretion standard. Under this standard, discretion is abused only where no reasonable person would take the view adopted by the trial court. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980)("Discretion ... is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court."); In re Estate of McArthur, 443 So.2d 1052 (Fla. 4th DCA 1984).
Applying this standard, we cannot say that no reasonable person could take the trial court's view. Reasonable people could differ as to what constitutes a reasonable search and what entails impractical or extraordinary effort. Certainly, as the attorney ad litem acknowledges, his success in locating Cadle and the decedent's account came only after several phone calls. Moreover, it came in hindsight, after Cadle had filed its claim and its name was known to the attorney at litem. However, as the attorney at litem suggests, had the personal representative flipped back just a few more pages in the decedent's check register, he might have noticed a pattern of checks for $1500.00, questioned these amounts, cross-referenced them with copies of the checks, and then identified Cadle as a potential creditor. Thus, there is a conceivable basis upon which the trial court could find that the personal representative's search was not sufficient to satisfy the requirements of section 733.212(4)(a).
Based on the above, we find no abuse of discretion in the trial court's determination that Cadle was a reasonably ascertainable creditor. Accordingly, we affirm the order denying the petition to strike Cadle's claim against the estate.
AFFIRMED.
WARNER and STEVENSON, JJ., concur.
NOTES
[1] Phyllis Strulowitz predeceased Harold Strulowitz.
[2] Section 733.702(1), Florida Statutes (2000), provides in pertinent part:

[N]o claim or demand against the decedent's estate that arose before the death of the decedent ... is binding on the estate, on the personal representative, or on any beneficiary unless filed within the later of 3 months after the time of the first publication of the notice of administration or, as to any creditor required to be served with a copy of the notice of administration, 30 days after the date of service of such copy of the notice on the creditor.
[3] In this regard, we think it would be helpful if the Probate Section of the Florida Bar Probate Rules Committee considered proposing or extending existing rules to give estate administrators and trustees more direction in their diligent searches for creditors.