Daniel L. WETHINGTON and Kathy
Wethington, Plaintiffs,

v.

WELLINGTON INDUSTRIES, INC., Co-
lonial Freight Systems, Inc., and Gener-
al Motors Corporation, Defendants.

No. IP87–1179–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 27, 1991.

Robert M. Baker, III, Frederick D. Em-
hardt, Miller, Faires, Hebert & Woddell,
P.C., Norman T. Funk, Donald D. Levenha-
gen, Hill Fulwider McDowell Funk & Mat-
thews, Indianapolis, Ind., for plaintiffs.

Wayne C. Kreuscher, Jack M. Freeman,
Barnes & Thornburg, Indianapolis, Ind., for
defendants.

BARKER, District Judge.

Plaintiff Daniel Wethington was a truck
driver who on October 16, 1986, picked up
one of the trailers from Colonial Freight
Systems, Inc. ("Colonial"), in Indianapolis
and then drove to Detroit to the terminal of
Wellington Industries, Inc. ("Wellington"),
in order to pick up a load of auto parts for
transport to General Motors Corporation in
Indianapolis. Returning from Detroit,
Daniel Wethington was injured in an acci-
dent which occurred as he was negotiating
a turn in Hendricks County, Indiana.

On May 21, 1990, Daniel Wethington set-
tled a worker's compensation claim with
Colonial. This settlement was approved by
the Worker's Compensation Board of

Indiana on July 3, 1990. Thereafter, on August 20, 1991, the plaintiffs and Colonial filed a joint motion to dismiss the complaint and a counterclaim, which this court granted on August 21, 1991.

■ Currently before the court is Wellington's Motion to Amend Answer to Assert Non-party Defense. The Indiana Comparative Fault Act provides that "[i]n an action based on fault, a defendant may assert as a defense that the damages of the claimant were caused in full or in part by a nonparty. Such a defense is referred to in this section as a nonparty defense." IC 34-4-33-10(a). The Act further provides, " 'Nonparty' means a person who is, or may be, liable to the claimant in part or in whole for the damages claimed but who has not been joined in the action as a defendant by the claimant. A nonparty shall not include the employer of the claimant." IC 34-4-33-2(a). Wellington seeks to add Colonial as a nonparty.

The plaintiffs advance three arguments in opposition to Wellington's motion. Since the court agrees with the plaintiffs that as a matter of law, Colonial is not "a person who is, or may be, liable" to them, and since that status disqualifies Colonial as a nonparty, the court need not and will not reach the plaintiffs' remaining arguments.

The plaintiffs contend that Colonial is not "a person who is, or may be, liable" to them as a matter of law because "[t]he findings of the Worker's Compensation Board of Indiana and its order provide the exclusive remedy of Mr. Wethington against Colonial...." Plaintiffs' Reply to Wellington and General Motors' Response to Colonial's Motion for Summary Judgment (hereinafter "Plaintiffs' Brief") (adopted in Plaintiffs' Response to Motion to Amend Answer to Assert Non-party Defense), p. 3. Wethington and Colonial took advantage of the settlement mechanism provided for in the Worker's Compensation Act, IC 22-3-2-15, which states in part:

> [N]othing in IC 22-3-2 through IC 22-3-6 shall be construed as preventing the parties to claims under IC 22-3-2 through IC 22-3-6 from entering into voluntary agreements in settlement thereof, but no agreement by an employee or his dependents to waive his rights under IC 22-3-2 through IC 22-3-6 shall be valid nor shall any agreement of settlement or compromise of any dispute or claim for compensation under IC 22-3-2 through IC 22-3-6 be valid until approved by a member of the board, nor shall a member of the worker's compensation board approve any settlement which is not given in accordance with the rights of the parties as given in IC 22-3-2 through IC 22-3-6.

As noted above, a member of the Worker's Compensation Board approved the settlement agreement between Wethington and Colonial on July 3, 1990. The Award approved by a member of the Worker's Compensation Board provided that the money received by Wethington was "in full settlement and satisfaction of all claims which plaintiff may have against said defendant [Colonial] under the provisions of the Indiana Workmen's Compensation Law...."

The Worker's Compensation Act limits Wethington to this remedy against Colonial for his injuries. IC 22-3-2-6 provides:

> **Rights and remedies of employee exclusive.**—The rights and remedies granted to an employee subject to IC 22-3-2 through IC 22-3-6 on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under IC 16-7-3.6 [Compensation for Victims of Violent Crimes].

Since Colonial is statutorily immune from any further claims by Wethington in light of the settlement, and since those who are immune cannot be named as nonparties, *Huber v. Henley*, 656 F.Supp. 508, 510 (S.D.Ind.1987), the plaintiffs argue that Wellington's motion should be denied.

■ Wellington responds that both procedural due process and collateral estoppel principles should prevent it from being bound by the settlement between Colonial and Wethington. Wellington's due process

argument involves the citation of a recent Supreme Court case for the:

> "principle of general application in Anglo–American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S.Ct. 115, 117, 85 L.Ed. 22 (1940).... A judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.

*Martin v. Wilks*, 490 U.S. 755, 761–62, 109 S.Ct. 2180, 2184, 104 L.Ed.2d 835 (1989) (footnote and citations omitted). The Court also stated in *Martin* that "[a] voluntary settlement in the form of a consent decree between one group of employees and their employer cannot possible 'settle,' voluntarily or otherwise, the conflicting claims of another group of employees who do not join in the agreement." 490 U.S. at 768, 109 S.Ct. at 2188.

> The plaintiffs argue:

> Both Wellington and General Motors were well aware that the Worker's Compensation Board was going to render a decision regarding whether Mr. Wethington's claim was within the jurisdiction of that board. There is no law which would have prevented General Motors or Wellington from intervening in the Worker's Compensation case to assert how the decision of the Board might affect their rights in Federal Court.

Plaintiffs' Brief, p. 6. This argument was explicitly rejected by the Supreme Court in *Martin.*

Nonetheless, this court is not persuaded by Wellington's due process argument, such as it is. Aside from the *Martin* quote about notice and an opportunity to be heard, the extent of Wellington's due process argument is as follows:

> Since neither Wellington nor GM were parties to the worker's compensation proceeding [had there been one], both procedural due process and well entrenched principles of collateral estoppel support their right to prove that Wellington was an independent contractor.... If Colonial is now treated as an employer whose fault may not be considered by the jury, Wellington and GM's liability, if any, could significantly increase. To permit Wethington and Colonial to use a stipulation and/or settlement to increase Wellington and GM's exposure is contrary to all notions of fairness, justice and due process....

Defendant Wellington's and GM's Response to Defendant Colonial's Motion to Dismiss and/or for Summary Judgment (hereinafter "Defendant's Brief"), pp. 9 and 11 (referenced in Defendant's Motion to Amend Answer to Assert Non-party Defense). This argument is troublesome in its generality. What in particular deprived Wellington of due process is ambiguous.

■ The court feels constrained to read this due process argument liberally in light of *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 940–41, 102 S.Ct. 2744, 2755–56, 73 L.Ed.2d 482 (1982). Nonetheless, the court notes that a failure to identify a liberty or property interest protected by the Due Process Clause will be fatal to Wellington's due process argument. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). The language cited above from *Martin* was predicated on the existence of "the *rights* of strangers to ... proceedings." 490 U.S. at 762, 109 S.Ct. at 2184 (emphasis added). An analysis of due process claims generally begins with an assessment of the interest asserted by the party who claims to have been denied due process. As noted by the Supreme Court in *Mathews*, "our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three factors: First, the private interest that will be affected by the official action...." 424 U.S. at 334–35, 96 S.Ct. at 903. No such interest was asserted by Wellington.

One way of construing Wellington's argument would be to read it as alleging a deprivation of due process merely by the failure to allow Wellington an opportunity to be heard at a Worker's Compensation Board hearing. As a general matter, Wellington has established no entitlement to participate in such a hearing (had there been one here) between a claimant and a putative employer. Indeed, while the plaintiffs attempt to argue that the defendants could have participated in such a hearing, all that they can offer in support of this position is speculation. Even if Wellington had been allowed to participate, there is no evidence that it would have had any power to prevent Daniel Wethington and Colonial from entering into a settlement. Nothing in Wellington's argument, as it stands, suggests a due process violation merely from the fact that Wellington was not allowed to be heard at a Worker's Compensation Board hearing.

A second way of understanding Wellington's due process argument would be to construe it as challenging the Comparative Fault Act itself. The argument would be that the consequences of the settlement between Wethington and Colonial on Wellington's share of any potential liability (whether that share will increase or decrease being unclear) are a result of the operation of the Comparative Fault Act, which manipulates liability so as to allow an allocation of fault only to plaintiffs, defendants, and nonparties. *See* IC 34–4–33–5; *Bowles v. Tatom*, 546 N.E.2d 1188, 1190 (Ind.1989); *Rauck v. Hawn*, 564 N.E.2d 334, 338 (Ind.App. 1 Dist.1990); *Walters v. Dean*, 497 N.E.2d 247, 253 (Ind. App. 1 Dist.1986).

A challenge directed at the Comparative Fault Act rather than at proceedings before the Worker's Compensation Board is more persuasive in that under the Comparative Fault Act, Wellington can be barred from naming Colonial as a nonparty not just by the substance of the settlement between Wethington and Colonial but also by the fact that it occurred. Since the settlement was Wethington's exclusive remedy against Colonial, Colonial cannot again be held liable to Wethington and hence cannot be named as a nonparty. The court need not reach the substantive issue of whether Colonial was in fact Wethington's employer.

For this reason, Wellington's collateral estoppel argument is unpersuasive. Wellington is not being bound by an issue litigated before the Worker's Compensation Board. *Martin's* prohibition against binding parties by the settlement of others could arguably be distinguished on the same basis. Wellington is being bound not by the terms of the settlement but rather by the terms of the Comparative Fault Act.

Analyzing Wellington's due process challenge with respect to the Comparative Fault Act, Wellington's failure to identify a protected liberty or property interest undermines its argument, as noted above. Moreover, a challenge directed at the operation of the Act might lack the requisite element of state action to support a due process claim. "The Fourteenth Amendment protects ... interest[s] ... only from deprivation by state action. Private use of state sanctioned remedies or procedures does not rise to the level of state action." *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 485, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)). In *Tulsa*, the Supreme Court distinguished between "self-executing" statutes of limitation which did not entail the requisite state action and situations where legal proceedings were necessary to establish a time bar, thus involving state action. *Tulsa*, 485 U.S. at 486–87, 108 S.Ct. at 1345–46. In contrast to "the State's involvement in the mere running of a general statute of limitation" which does not implicate the Due Process Clause, *id.*, 485 U.S. at 485, 108 S.Ct. at 1345, the use of legal proceedings to the same end does raise constitutional concerns. *Id.*, 485 U.S. at 487, 108 S.Ct. at 1346.

The mere enactment of legislation is apparently insufficient state action to implicate the Due Process Clause. In *Flagg Bros.*, the Supreme Court dealt with "a warehouseman's proposed sale of goods en-

trusted to him for storage, as permitted by [the] New York Uniform Commercial Code...." *Flagg Bros.*, 436 U.S. at 151, 98 S.Ct. at 1731. The Court held that such a procedure did not involve state action and thus did not give rise to a due process claim. *Id.*, 436 U.S. at 151–153, 98 S.Ct. at 1731–32. In reaching this result, the Court noted:

> Our cases state "that a State is responsible for the ... act of a private party when the State, by its law, has compelled the act." *Adickes* [*v. S.H. Kress & Co.*,] 398 U.S. [144,] 170, 90 S.Ct. [1598,] 1615[, 26 L.Ed.2d 142 (1970) ]. This Court, however, has never held that a State's mere acquiescence in a private action converts that action into that of the State.

*Flagg Bros.*, 436 U.S. at 164, 98 S.Ct. at 1737; *see also Edmonson v. Leesville Concrete Co.*, — U.S. —, 111 S.Ct. 2077, 2083–84, 114 L.Ed.2d 660 (1991) ("Although private use of state-sanctioned private remedies or procedures does not rise, by itself, to the level of state action, our cases have found state action when private parties make extensive use of state procedures with 'the overt, significant assistance of state officials.'" (quoting *Tulsa*, 485 U.S. at 486, 108 S.Ct. at 1345) (citations omitted)). Accordingly, it seems unlikely that the mere enactment and existence of the fault allocation scheme in the Comparative Fault Act involves the requisite element of state action to implicate the Due Process Clause.

If the enactment of the Comparative Fault Act is insufficient state action to trigger due process concerns, then perhaps the state action requirement would be satisfied if the Comparative Fault Act were considered in tandem with the Worker's Compensation Act settlement procedure, in which a settlement is not valid until approved by a Worker's Compensation Board member pursuant to IC 22–3–2–15. *Flagg Bros.*, 436 U.S. at 164–165, 98 S.Ct. at 1737–38, suggests that the mere authoriza-

tion of a settlement by a Worker's Compensation Board member may not be enough involvement to constitute state action. *But see Tulsa*, 485 U.S. at 486–88, 108 S.Ct. at 1345–46 (holding that probate court's involvement in triggering time bar in nonclaim statute is so substantial as to constitute state action for Fourteenth Amendment purposes).[1]

This court need not decide whether the state action requirement is satisfied under these circumstances, however, because Wellington's failure to identify a protected liberty or property interest is fatal to its due process argument, particularly in light of the readily-apparent countervailing state interests. Generally, the state has a strong interest in designing its own tort system. In *Martinez v. California*, 444 U.S. 277, 282, 100 S.Ct. 553, 557, 62 L.Ed.2d 481 (1980), the Supreme Court noted that "the State's interest in fashioning its own rules of tort law is paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational." The strength of that state interest can be seen in the Supreme Court's rejection of constitutional challenges to various statutory departures from common law tort rules. *See, e.g., Silver v. Silver*, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929) (upholding Connecticut guest statute against Fourteenth Amendment challenge); *New York Cent. R.R. Co. v. White*, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1917) (upholding New York Workmen's Compensation Act against due process and other constitutional challenges).

Specifically with regard to the statutory schemes at issue in this litigation, Judge Miller of the Northern District of Indiana explored the accommodation of interests between the Worker's Compensation and Comparative Fault Acts in *Hill v. Metropolitan Trucking, Inc.*, 659 F.Supp. 430 (N.D.Ind.1987). Judge Miller wrote:

1. The role of the Worker's Compensation Board member in reviewing the proposed settlement should not be underemphasized, however, as this review could prevent two parties from collusively settling under the Worker's Compensa-

tion Act, despite the absence of an employer-employee relationship, in order to prevent in subsequent litigation having one of the parties designated as a nonparty for Comparative Fault Act purposes.

Indiana's workers' compensation statutes insulate employers from civil suits by employees who are injured on the job. In exchange for a workers' compensation system that ignores the issue of fault, Indiana law vests the employer with a lien on any civil recovery the employee achieves against a third party.

Under the original version of Indiana's comparative fault law, a fault-free plaintiff suing a third party for injuries suffered in the course of his employment would have faced the prospect that the jury would apportion fault to the employer. Because the workers' compensation laws provide an exclusive remedy, the plaintiff could not recover that share of his damages apportioned to his employer. Further, the employer could enforce its lien on the share of damages recovered from the third party, further reducing the plaintiff's recovery. The 1984 amendments cured this inequity by defining "nonparty" and excluding the claimant's employer.

*Id.* at 433 (citations omitted).

Judge Miller's discussion illustrates that the interaction of the Comparative Fault and Worker's Compensation Acts necessitated the reconciliation of a number of competing interests.

This court need not identify and weigh all the state interests served by the enactment of these two pieces of legislation, however, in light of Wellington's failure to assert a property or liberty interest which is allegedly sacrificed. Wellington does argue that its liability *"could* significantly increase" if not allowed to name Colonial as a nonparty. Defendant's Brief, p. 11 (emphasis added). Wellington's conditional assertion betrays the speculative nature of its interest. As the plaintiffs argue, how the jury will allocate fault in Colonial's absence is unclear. Plaintiffs' Brief, p. 8. Indeed, should the jury find Wethington's fault to be greater than that of the defendants, then under IC 34-4-33-4, Wethington would not recover anything from Wellington.

Perhaps Wellington's due process challenge could be construed as predicated on the deprivation of a defense (if the ability to name Colonial as a nonparty could be so characterized) rather than as based on a speculative "unfair" allocation of fault. The Supreme Court has recognized that "a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause," *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982), and there seems to be a certain symmetry in according the same status to a defense. However, property interests spring from "individual entitlement[s] grounded in state law, which cannot be removed except 'for cause.'" *Id.,* 455 U.S. at 430, 102 S.Ct. at 1155 (citations omitted). Wellington has identified no state law entitlement to name Colonial as a nonparty if Colonial may not be held liable to the plaintiffs.

Even if Wellington had an entitlement to raise a nonparty defense, the Supreme Court has made clear that:

the State remains free to create substantive defenses or immunities for use in adjudication—or to eliminate its statutorily created causes of action altogether.... The Court held as much in *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), where it upheld a California statute granting officials immunity from certain types of state tort claims. We acknowledge that the grant of immunity arguably did deprive the plaintiffs of a protected property interest. But they were not thereby deprived of property without due process, just as a welfare recipient is not deprived of due process when the legislature adjusts benefit levels.

*Logan,* 455 U.S. at 432, 102 S.Ct. at 1156 (citations omitted). Had Wellington asserted an interest, the Supreme Court's recognition of a state's ability to eliminate defenses raises serious question about whether the interest would have been protected by the Due Process Clause.

Wellington's failure to define an interest also makes it difficult to decide if the operation of the Worker's Compensation and Comparative Fault Acts combine to " 'adversely affect' " that interest. *Tulsa,* 485

U.S. at 488, 108 S.Ct. at 1346. In a Comparative Fault Act case, a defendant may introduce evidence of the alleged negligence of others who are neither parties nor nonparties not for fault allocation purposes but rather for the purpose of contesting whether the plaintiff has met its burden of proof of fault under IC 34–4–33–10(b). *See Moore v. General Motors Corp.,* 684 F.Supp. 220, 221 (S.D.Ind.1988); *Kveton v. Siade,* 562 N.E.2d 461, 464 (Ind.App. 3 Dist.1990); *Evans v. Schenk Cattle Co.,* 558 N.E.2d 892, 894–95 (Ind.App. 1 Dist. 1990). Since Wellington may produce evidence about Colonial's conduct to rebut the plaintiffs' case, it is unclear how, if at all, Wellington's undefined interest is deprived.

This court is not ruling that a Due Process violation could never be established based on the combined operation of the Worker's Compensation and Due Process Acts. An analogy can be drawn between this case and *Martin,* where the Supreme Court held that a consent decree cannot settle the claims of those who do not join it. 490 U.S. at 768, 109 S.Ct. at 2188; *see also Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 529, 106·S.Ct. 3063, 3079, 92 L.Ed.2d 405 (1986) ("[O]f course, a court may not enter a consent decree that imposes obligations on a party that did not consent to the decree." (citations omitted)). What the court is concluding is that, having failed to assert and identify a protected liberty or property interest, Wellington has "failed to provide sufficient justification for concluding," *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 85, 100 S.Ct. 2035, 2043, 64 L.Ed.2d 741 (1980), that its due process rights would be deprived should it not be able to name Colonial as a nonparty.

## CONCLUSION

Wellington sought to add Colonial as a nonparty on the basis that factual questions existed regarding Colonial's status as an employer or independent contractor (and presumptively about fault attributable to Colonial). Motion to Amend Answer to Assert Nonparty Defense, para. 3. Since the court concludes that Colonial does not meet the statutory definition of a nonparty because it cannot be held liable in this lawsuit as a result of its settlement with Wethington under the Worker's Compensation Act, and since the court has rejected Wellington's due process and collateral estoppel arguments, the court hereby denies Wellington's motion.

It is so ORDERED.