THOMAS, Judge.
 

 Singer Asset Finance Company, L.L.C. (“Singer”), filed a claim against the estate of Richard H. Rutherford, stating that pursuant to a perfected security agreement between Rutherford and Mutual BanCorp (“Mutual”), which was later assigned to Singer, the estate owed Singer $35,000. The representative of the estate countered that Singer’s claim was barred by the nonclaims statute, § 43-2-350, Ala. Code 1975, and was, therefore, unenforceable. The Jefferson Probate Court agreed with the representative of the estate and denied Singer’s claim.
 

 Singer appealed to the Jefferson Circuit Court; the circuit court entered a summary judgment for the estate. Singer appeals, arguing that it was a reasonably ascertainable creditor who was not given actual notice of the issuance of letters of administration for the estate, and, therefore, it says, the nonclaims statute did not bar its claim.
 

 We are releasing today an opinion in another appeal by Singer; in that appeal, Singer sought review of judgment dismissing its claims against Connecticut General Life Insurance Company (“CGLIC”).
 
 See Singer Asset Fin. Co. v. Connecticut General Life Ins. Co.,
 
 975 So.2d 375 (Ala.Civ.App.2007). The facts underlying both appeals are essentially the same and are undisputed.
 

 Richard Rutherford was injured in an Atlantic City, New Jersey, casino, and, in settlement of his claim against the casino, he agreed to a structured settlement with North River Life Insurance Company (“North River”), the insurer of the casino. The agreement, among other things, provided that Rutherford would receive five periodic payments. The payments were to be made according to the following schedule:
 

 $15,000.00 payable on April 1,1990;
 

 $15,000.00 payable on April 1,1995;
 

 $20,000.00 payable on April 1, 2000;
 

 $35,000.00 payable on April 1, 2005; and
 

 $50,000.00 payable on April 1, 2010.
 

 
 *1255
 
 In accordance with its rights under the settlement agreement, North River subsequently purchased a guaranteed investment annuity contract from CGLIC to fund its obligation to make the periodic payments to Rutherford.
 

 On April 30, 1998, Rutherford entered into a security agreement with Mutual, assigning to Mutual two of the periodic payments in return for an immediate cash payment. The assigned payments were the April 1, 2000, payment for $20,000, and the April 1, 2005, payment for $35,000. On the same day, Mutual provided written notice of the assignment to CGLIC and North River. Mutual then assigned its rights to the two periodic payments to Singer on or about May 11,1998. On May 19, 1998, Mutual filed a UCC-1 financing statement with the office of the Alabama Secretary of State. CGLIC made the April 1, 2000, payment to Singer.
 

 On May 24, 2002, Rutherford died. Almost a year later, on April 1, 2003, the UCC-1 financing statement previously filed by Mutual was amended to reflect that Singer was the assignee of Mutual’s interest in the security agreement. On April 2, 2003, the day after the UCC-1 financing statement was amended to add Singer as the assignee, and almost a year after Rutherford’s death, letters of administration were issued to Roy F. King, Jr., serving as the general county administrator for Jefferson County. Rutherford’s wife had predeceased him in May 1996, leaving Rutherford’s son, Christopher, as Rutherford’s sole heir.
 

 King had been contacted by Margaret Lathum, an attorney, who claimed that she had represented Rutherford and his wife before they died, as well as their only son, Christopher, who was then in prison. Lat-hum told King that Christopher was trying to get his father’s estate probated and asked King if he would serve as the administrator. King agreed and asked Lathum for any information she had about the assets, liabilities, and debts of the estate. King claimed that Lathum gave him the following information: that Rutherford had been a plaintiff in pending asbestos litigation and that there was a check from an insurance company for the “Death Benefit of Richard Rutherford” in the amount of $46,704.65. That check had actually been issued by CGLIC and represented the commuted amount of the remaining settlement proceeds.
 
 [1]
 

 Publication notice to creditors was made on April 5, April 12, and April 19, 2003. Lathum subsequently delivered to King the check from CGLIC, which was dated January 7, 2003, and King deposited the check into the bank account for the estate. King claimed that other than the check made payable to the estate and the information Lathum had provided him regarding the pending asbestos claim that Rutherford had previously filed, he received no information, from either Christopher Rutherford or Lathum, regarding the assets or liabilities of the estate.
 

 On November 12, 2003, after deducting all the estate debts, court costs, and administrative fees, and after receiving the check from CGLIC and a settlement sum from the law firm handling the asbestos claim, King paid over substantially all of the remaining estate assets to the sole heir, Christopher Rutherford.
 

 
 *1256
 
 Singer claims that it first received notice that the estate had been administered and that the check representing the commuted proceeds from the settlement agreement had been paid to the estate on November 9, 2004, almost a year after King had distributed the assets of the estate to Christopher Rutherford. On November 12, 2004, Singer, as the assignee of the right to receive $35,000 from CGLIC on April 1, 2005, filed a proof of claim with the Jefferson Probate Court. King filed a contest of claim on December 21, 2004, asserting that Singer’s claim was barred by the nonclaims statute. Following a hearing, the probate court denied the claim asserted by Singer and entered a judgment in favor of the estate. Singer appealed the probate court’s decision to the circuit court for a de novo hearing. After a hearing on a summary-judgment motion filed by King, the circuit court entered a summary judgment in favor of the estate.
 

 Singer timely appeals, raising three issues: (1) whether Singer was a “reasonably ascertainable” creditor under § 43-2-61, Ala.Code 1975; (2) whether King exercised due diligence in searching for reasonably ascertainable creditors of the estate; and (3) whether Singer’s claim was a claim of title allowing Singer to assert its claim as an exception to the nonclaims statute.
 

 Although Singer raises three issues for this court to consider, the first two issues are interconnected and will be treated, for the purposes of this opinion, as one issue, namely, whether Singer was a reasonably ascertainable creditor under § 43-2-61. Because of our disposition of that issue, we pretermit any discussion of whether Singer’s claim was a claim of title, which is an exception to the nonclaims statute.
 

 Standard of Review
 

 This court recently stated our well-settled standard of review of a summary judgment in
 
 Hunt v. Atrex, Inc.,
 
 963 So.2d 122, 123 (Ala.Civ.App.2007):
 

 “‘We review a summary judgment de novo, applying the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law.” Rule 56(c)(3), Ala. R. Civ. P. The court must view the evidence in a light most favorable to the nonmov-ing party and must resolve all reasonable doubts against the movant.
 
 Hanners v. Balfour Guthrie, Inc.,
 
 564 So.2d 412 (Ala.1990). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ”
 
 Lee v. City of Gadsden,
 
 592 So.2d 1036, 1038 (Ala.1992).’ ”
 

 (Quoting
 
 Bailey v. R.E. Garrison Trucking Co.,
 
 834 So.2d 122, 123 (Ala.Civ.App.2002).)
 

 Issues
 

 Alabama’s nonclaims statute provides, in pertinent part:
 

 “All claims against the estate of a decedent, other than the claims referred to in subsection (a) of this section [i.e., claims ‘held by the personal representative of the decedent or by an assignee or transferee of the personal representative, or in which the personal representative has an interest’], whether due or to become due, must be presented within six months after the grant of letters, or within five months from the date of the first publication of notice, whichever is the later to occur, provided however,
 
 *1257
 
 that any creditor entitled to actual notice as prescribed in section 43-2-61 must be allowed thirty days after notice within which to present the claim, and if not presented within that time, they are forever barred and the payment or allowance thereof is prohibited.”
 

 § 43-2-350(b), Ala.Code 1975. Section 43-2-61, Ala. Code 1975, states which creditors are entitled to actual notice and the required manner of giving notice:
 

 “Notice ... must be given:
 

 “(1) By first-class mail addressed to their last known address, or by other mechanism reasonably calculated to provide actual notice, to all persons, firms, and corporations having claims against the decedent, who are known or
 
 who are reasonably ascertainable
 
 by the personal representative within six months from the grant of letters; and
 

 “(2) By publishing a notice once a week for three successive weeks in a newspaper of general circulation published in the county in which the letters were granted or, if none is published in the county, in the one published nearest to the courthouse thereof or in an adjoining county.”
 

 (Emphasis added.)
 

 Singer does not allege that it filed its claim within the prescribed six-month claim period set out in § 43-2-350. Rath-ex’, Singer argues that it was entitled to actual notice of the probate pi’oeeedings because, it says, it was a reasonably ascertainable creditor. Accordingly, Singer asserts that because it was not given actual notice, its claim should not be barred by the nonclaims statute.
 

 Singer bases its argument that it was a reasonably ascertainable creditor on two grounds. First, citing
 
 American Home Assurance Co. v. Gaylor,
 
 894 So.2d 656 (Ala.2004), and
 
 Carter v.
 
 Beck, 598 So.2d 1390 (Ala.1992), Singer asserts that Eng had a duty to inquire into the basis for CGLIC’s issuance of the “death benefit” check to the estate. Singer claims that if Eng had contacted CGLIC to inquire about the basis for the check, that inquiry would have led to information revealing Singer’s existence and disclosing Singer’s claim as an assignee of Richard Rutherford’s interest. Second, citing Oklahoma and Florida decisions, Singer contends that Eng had a duty to search public records, including UCC filings, to ascertain the existence of Rutherford’s creditors. Singer maintains that Eng’s admission that he was “not getting any information from [Rutherford’s] family” suggests that Eng had a heightened duty to ascertain the existence of Rutherford’s potential creditors.
 

 Because we rely on Singer’s first ground to hold that there is a genuine issue of material fact with respect to whether Singer is a reasonably ascertainable creditor, we need not address Singer’s second ground regarding the duty of a personal representative to search public records. In addition, we express no opinion concerning whether the lack of information from a decedent’s family places any heightened duty on a decedent’s personal representative to ascertain the existence of the decedent’s creditors.
 

 Discussion
 

 The United States Supreme Court, in
 
 Mullane v. Central Hanover Bank & Trust Co.,
 
 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), held that the Due Process Clause of the Fourteenth Amendment requires that notification of state action affecting property must generally be provided to interested parties.
 
 Id.
 
 at 314, 70 S.Ct. 652. Subsequently, in
 
 Mennonite Board of Missions v. Adams,
 
 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the
 
 *1258
 
 Supreme Court held that due process requires “actual notice” as a “minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of
 
 any
 
 party ... if its name and address are reasonably ascertainable.”
 
 Id.
 
 at 800, 103 S.Ct. 2706.
 

 The
 
 Adams
 
 case involved the sale of real property for delinquent taxes in which a mortgagee of the property was not given actual notice of the sale or of the running of the statutory period of redemption. The Court held that because the tax sale had diminished the value of the mortgagee’s interest and because the mortgagee could have been identified through “reasonably diligent efforts,” due process required that actual notice should have been given to the mortgagee. 462 U.S. at 798 and n. 4, 103 S.Ct. 2706.
 

 The principles of
 
 Mullane
 
 and
 
 Adams
 
 were applied to probate proceedings in
 
 Tulsa Professional Collection Services, Inc. v. Pope,
 
 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). There, the Court held that a decedent’s personal representative must use “ ‘reasonably diligent efforts[ ]’ ... to uncover the identities of creditors,” 485 U.S. at 490, 108 S.Ct. 1340, and that if the creditor’s “identity was known or ‘reasonably ascertainable,’ then termination of [the] claim without actual notice violated due process.”
 
 Id.
 
 at 491, 108 S.Ct. 1340. The Court concluded that the “reasonably ascertainable standard,” as applied to probate proceedings, was not “so burdensome or impracticable as to warrant reliance on publication notice alone.”
 
 Id.
 
 at 490, 108 S.Ct. 1340.
 

 In
 
 Pope,
 
 a hospital sought to collect unpaid medical bills from the estate of the decedent, but the hospital did not file its claim within the statutorily prescribed time-frame under Oklahoma’s nonclaims statute. The Court held that although the decedent’s widow, who was the executrix of the estate, was aware that her husband had stayed a long time at the hospital, it was not clear whether that awareness “translate[d] into a knowledge of the [hospital’s] claim,”
 
 id.
 
 at 491, 108 S.Ct. 1340, because the Oklahoma courts had not considered the question. Therefore, the Court remanded the case for further proceedings to determine whether “reasonably diligent efforts” would have “identified [the hospital] and uncovered its claim.”
 
 Id.
 

 The Alabama Supreme Court applied the principles discussed in
 
 Pope
 
 to its decision in
 
 Carter v. Beck,
 
 supra. In
 
 Carter,
 
 William Carter suffered an injury resulting from what, he alleged, was a defect in a modification to his tractor done by Thomas Vaughn. By the time Carter filed his claim, Vaughn was deceased. The trial court entered a summary judgment for Beck, the administratrix of Vaughn’s estate, because Carter had not filed his claim within six months of the issuance of letters of administration as required by Alabama’s nonclaims statute.
 

 The Alabama Supreme Court reversed the summary judgment, concluding that Beck had not met her burden as the mov-ant to “make a prima facie showing that no genuine issue of material fact existed and that she was entitled to a judgment as a matter of law.” 598 So.2d at 1391. The court stated that “it [was] possible that Beck could have learned of Carter’s claim from a source other than Carter or his attorney or could have obtained from such a source information from which she could have reasonably identified Carter as a potential claimant against Vaughn’s estate.”
 
 Id.
 
 The court determined that because Beck had “presented no evidence to eliminate this possibility,” the court could not hold, under the standard for reviewing a summary judgment, “that Beck neither knew nor had any reasonable means of
 
 *1259
 
 ascertaining the existence of Carter’s claim within six months after she was issued letters of administration and, thus, that she was entitled to a judgment as a matter of law.”
 
 Id.
 

 More recently, in
 
 American Home
 
 As
 
 surance Company v. Gaylor,
 
 supra, the Alabama Supreme Court reversed another summary judgment in favor of an adminis-tratrix because the administratrix had “failed to demonstrate that she did not have a reasonable means of ascertaining whether [a creditor who had filed a claim after the time allowed by the nonclaims statute had passed] had a claim against the estate.” 894 So.2d at 661.
 

 In
 
 Gaylor,
 
 the driver of a sport-utility vehicle was killed when his vehicle crashed into the rear of a tractor-trailer truck. The administratrix of the driver’s estate did not provide actual notice of the probate proceedings to the truck driver. Claiming that she had no actual knowledge of the claim or potential claim by the truck driver, the administratrix argued that the truck driver was not a “reasonably ascertainable creditor” because the accident report indicated that the truck driver had not been injured.
 

 Applying the same analysis that it had used in
 
 Carter,
 
 the court held that the mere disavowal of knowledge by the ad-ministratrix as to the existence of the truck driver’s actual or potential claim was insufficient to meet her burden as the movant for a summary judgment. The court determined that the administratrix had failed to establish either that she had
 
 “no
 
 information that would have made ‘the status of [the subrogee of the truck driver] as a potential creditor reasonably ascertainable,’ ” or that she “took any steps to eliminate the possibility that [the truck driver] had been injured.”
 
 Id.
 
 at 660 (quoting the affidavit of the administra-trix). The court further decided that the severity of the accident — which caused the deaths of three people and $14,000 in damage to the truck driver’s tractor-trailer— “created a duty requiring [the administra-trix] to inquire into the possibility of a claim against [the] estate by [the truck driver].”
 
 Id.
 
 Finally, the court reasoned that the truck driver’s name, address, and telephone number were listed on the accident report and, thus, that the administra-trix had a “ ‘reasonable means of ascertaining the existence of a claim.’ ”
 
 Id.
 
 (quoting
 
 Carter,
 
 598 So.2d at 1391).
 

 We derive the following principles from the decisions in
 
 Pope, Carter,
 
 and
 
 Gaylor:
 
 (1) whether a creditor is “reasonably ascertainable” and whether a personal representative has exercised “reasonably diligent efforts” to uncover a potential creditor are questions of fact dependent upon the circumstances of each individual case; (2) when a personal representative is the movant for a summary judgment in a case such as the one now before us, the personal representative’s mere disavowal of knowledge of a claim, or a potential claim, will not meet the personal representative’s burden to make a prima facie showing that there is no genuine issue of material fact as to whether the claimant is a reasonably ascertainable creditor; and (3) instead, the personal representative must present evidence to eliminate the possibility that with reasonably diligent efforts, and with the information the personal representative has about the decedent, the decedent’s assets, and the decedent’s liabilities, the personal representative would have uncovered the potential claim.
 

 Applying those principles to the present case, we hold that King presented no evidence to eliminate the possibility that he could have learned of Singer’s claim by contacting CGLIC about the death-benefit check.
 
 See Carter,
 
 598 So.2d at 1391
 
 *1260
 
 (holding that “it [was] possible that Beck could have learned of Carter’s claim from a source other than Carter or his attorney or could have obtained from such a source information from which she could have reasonably identified Carter as a potential claimant against Vaughn’s estate”). King had a source available to him that could have led to information uncovering the existence of Singer’s potential claim against the estate, and King presented no evidence to eliminate the possibility that contacting CGLIC would have revealed information that would have enabled King to “reasonably ascertain” the existence of Singer and its claim.
 
 See Gaylor,
 
 894 So.2d at 660 (stating that the administratrix failed to establish that she had
 
 “no
 
 information that would have made ‘the status of [the subro-gee of the truck driver] as a potential creditor reasonably ascertainable’ ”).
 

 Therefore, in accordance with the principles of
 
 Pope, Carter,
 
 and
 
 Gaylor,
 
 we hold that the circuit court erred by entering a summary judgment in favor of the estate. Whether King should have contacted CGLIC and whether contacting CGLIC would have led to information making Singer “reasonably ascertainable” are genuine issues of material fact to be decided by the fact-fínder. The judgment of the Jefferson Circuit Court is reversed, and the cause is remanded for further proceedings.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 [1]
 

 . According to the annuity contract between North River and CGLIC, if Rutherford died before all the proceeds of the settlement were dispersed, a commuted amount of any remaining proceeds was to be paid to Rutherford's named beneficiary or to Rutherford’s estate. Because Rutherford's wife, Rutherford's beneficiary, predeceased him, the commuted proceeds became an asset of the estate.