GREENBERG, Circuit Judge,
concurring.
I write separately in this case because I believe Edmonson should be read to alter the interpretive landscape for all state action inquiries into whether a private actor should be considered a state actor for a particular action or course of conduct. I believe that the discrete test approach did not survive Edmonson.
I.
As the majority opinion notes, the Edmon-son Court described the state action doctrine as follows:
Our precedents establish that, in determining whether a particular action or course of conduct is governmental in character, it is relevant to examine the following: the extent to which the actor relies on governmental assistance and benefits, see Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 108 S.Ct. 1340 [99 L.Ed.2d 565] (1988); Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856 [6 L.Ed.2d 45] (1961); whether the actor is performing a traditional governmental function, see Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809 [97 L.Ed. 1152] (1953); Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276 [90 L.Ed. 265] (1946); cf. San Francisco Arts & Athletics, Inc. v. United States Olympic Committee, 483 U.S. 522, 544-45, 107 S.Ct. 2971, 2985-86 [97 L.Ed.2d 427] (1987); and whether the injury caused is aggravated in a unique way by the incidents of governmental authority, *1156 see Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836 [92 L.Ed. 1161] (1948).
Edmonson v. Leesville Concrete Co., 500 U.S. 614, 621-22, 111 S.Ct. 2077, 2083, 114 L.Ed.2d 660 (1991). Yet the majority concludes that this language applies only to one of the discrete state action inquiries, and assumes that the entire panoply of discrete tests survived Edmonson. I recognize that a number of courts have, like the district court and majority opinion in this case, continued to apply the discrete test approach. See, e.g., United Auto Workers v. Gaston Festivals, Inc., 43 F.3d 902, 906 (4th Cir.1995); Sherman v. Community Consolidated Sch. Dist., 8 F.3d 1160, 1168-69 (7th Cir.1993); Haavistola v. Community Fire Co., 6 F.3d 211, 215 (4th Cir.1993); Yeager v. City of McGregor, 980 F.2d 337, 339-40 (5th Cir.), cert. denied, - U.S. -, 114 S.Ct. 79, 126 L.Ed.2d 47 (1993); Moore v. Wyoming Medical Center, 825 F.Supp. 1531, 1540 (D.Wyo.1993). And because prior precedents of this Court similarly have ruled, I wrote the majority opinion that way. Groman v. Township of Manalapan, 47 F.3d 628 (3d Cir.1995).
But I believe that interpretation is wrong. In the first place, as the Supreme Court itself has pointed out, it never has been clear “[w]hether these different tests are actually different in operation or simply different ways of characterizing the necessarily fact-bound inquiry that confronts the Court in [each] situation”. Lugar v. Edmondson Oil Co., 457 U.S. 922, 939, 102 S.Ct. 2744, 2755, 73 L.Ed.2d 482 (1982). Thus, to say that there are no discrete tests is not saying anything new or radical. And, as is apparent by the description and application of the various scenarios in the majority opinion, utilization of the discrete test approach has created nothing short of an analytical muddle. For one thing, the discrete tests collapse into each other and overlap significantly. See 2 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law § 16.4 at 554-55 (2d ed. 1992). Moreover, “[ujnfortunately, [the Supreme Court] cases deciding when private action might be deemed that of the state have not been a model of consistency.” Edmonson, 500 U.S. at 632, 111 S.Ct. at 2089 (O’Connor, J. dissenting) and therefore it is unclear when and whether to apply particular tests. See also Lebron v. National R.R. Passenger Corp., — U.S. -, -, 115 S.Ct. 961, 964, 130 L.Ed.2d 902 (1995) (quoting Justice O’Con-nor). Further still, what is the use of having a strict “exclusive government function test” if an action otherwise deemed private under that test can become public under the “symbiotic relationship” test. Finally, the discrete test approach forced courts into pursuits of the viability of one or another test, rather than into an inquiry of whether under the facts of a particular case, there had been “state action.” See, e.g., Majority at 1143 n. 6 (discussing question of whether symbiotic relationship test remains viable).
In my view, Edmonson provided a way out of the muddle, and we should take it. Rather than stating a series of discrete tests and applying them separately to determine whether each by itself is satisfied, the Court considered a number of factors, and weighed them to determine whether, all things considered, the otherwise private actor fairly could be deemed to be a state actor. Under that new framework, courts should consider the principles furthered by the previous tests as part of a single balancing and weighing approach. And it should apply to all cases involving the question of whether a private actor is engaged in state action.
The state action confusion certainly stemmed in part from the fact that the Court created what appeared to be discrete tests but then utilized them to address particular factual scenarios. See Burton v. Wilmington Parking Auth., 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961) (courts must determine whether there is state action by “sifting facts and weighing circumstances”). Thus, the courts applied the different formulations on an ad-hoc basis to determine whether a party is attempting to hold the state or entity hable based on private actions “for which they cannot fairly be blamed.” Lugar, 457 U.S. at 936-37, 102 S.Ct. at 2753. I believe the Edmonson language takes us full circle back to those principles and provides us a way out of the muddle by mandating that we apply a different — and better and *1157 more flexible — framework than the prior eases.
II.
Edmonson’s discussion of the public function test further supports my conclusion that it set forth a new framework for deciding state-action issues. As noted above, prior to Edmonson, in order to constitute state action under the public function test, the action had to be traditionally within the exclusive prerogative of the state. But in Edmonson, the Court inquired only whether “the action in question involves the performance of a traditional function of the government.” Edmonson, id. 500 at 624, 111 S.Ct. at 2085. It appears that the Court intentionally deleted the exclusivity requirement for Justice O’Connor’s dissent suggested that the majority had “misstated the law” by holding that “state action may be imputed to one who carries out a ‘traditional governmental function.’ ” Id. at 639, 111 S.Ct. at 2093 (O’Connor, J., dissenting). The dissent continued: “In order to constitute state action under [the public function] doctrine, private conduct must not only comprise something that the government traditionally does, but something that only the government traditionally does.” Id. at 640, 111 S.Ct. at 2093 (O’Connor, J. dissenting). In other words, Edmonson seems consciously to have eliminated the “exclusivity” requirement from the public function inquiry.[1] See also McKeesport Hospital v. Accreditation Council for Graduate Medical Ed., 24 F.3d 519, 528 (3d Cir.1994) (Becker, J., concurring in judgment) (“Edmonson ... seemed to eliminate the ‘exclusivity’ requirement of the public function test for state action.”).[2]
But, if Justice O’Connor’s conclusion was correct — that under the majority’s analysis state action could be found simply from the fact that the challenged action occurred within a “traditional government function,” the Court would have widened significantly the category of “public functions.” After all, “many functions have been traditionally performed by governments.” Flagg Bros. Inc. v. Brooks, 436 U.S. 149, 158, 98 S.Ct. 1729, 1734, 56 L.Ed.2d 185 (1978). Yet, if the three-test approach, under which satisfaction of one of the discrete tests is enough, is the only approach after Edmonson, then the *1158 Court in Edmonson would in fact have expanded greatly the circumstances in which there had been state action and the possibility of section 1983 liability. I doubt that the Court intended that result and thus Edmon-son is best understood if it is recognized that an inquiry into whether a private party performs a public function merely is one important factor to consider in determining whether state action exists.[3]
In my reading, then, the three tests no longer (if they ever did) constitute discrete, dispositive tests to the exclusion of a broader approach. Instead, a court should consider the principles embodied in those tests in determining whether it is fair to find state action in a particular case. Thus, the fact that the action constituted a traditional governmental function, while certainly relevant, does not in itself necessarily mean there has been state action. Rather, a court generally should go on to consider other relevant factors.

. The Court of Appeals for the Fourth Circuit, in analyzing the effect of Edmonson, held that “exclusivity" still is part of the public function test. It reasoned as follows:
[W]e do not believe the Supreme Court would have attempted to change radically the government function standard set forth in Jackson, 419 U.S. at 353 [95 S.Ct. at 454-55], and thereafter applied consistently in Flagg Bros., 436 U.S. at 157-58 [98 S.Ct. at 1733-35], Rendell-Baker, 457 U.S. at 842 [102 S.Ct. at 2771-72], Blum v. Yaretsky, 457 U.S. 991, 1005, 1011-12, (1982), [San Francisco Arts & Athletics v. United States Olympic Comm., 483 U.S. 522, 544-45, 107 S.Ct. 2971, 2985, 97 L.Ed.2d 427 (1987)], and NCAA v. Tarkanian, 488 U.S. 179, 197-98 n. 18 [109 S.Ct. 454, 465 n. 18, 102 L.Ed.2d 469] (1988), through the transparent puerilism of simple omission. If it had intended to change the law in this respect, we believe it would have said so explicitly. Moreover, the ultimate reasoning of the Court in Edmonson was that juror selection was traditionally an exclusive governmental function. See, e.g., Edmonson, 500 U.S. at 627 [111 S.Ct. at 2086-87] ("The selection of jurors represents a unique governmental function delegated to private litigants by the government and attributable to the government_" (emphasis added)).
United Auto Workers, 43 F.3d at 906 n. 2. While the United Auto Workers court's point is well taken, its rationale is based on a premise I reject — that the public function test necessarily remains, in and of itself, a method of imposing state actor status. As discussed in the text, infra, I agree that the Supreme Court would not simultaneously have retained the public function test yet deleted the exclusivity requirement. That would be a breathtaking expansion of the state action doctrine. But it does make sense to delete the "exclusivity” requirement and use the public function concept as part of a broader state action inquiry. Thus, in my reading of Edmonson, it does not constitute such a radical change in the law that an explicit statement that "we abandon the exclusivity requirement” is required. After all, other than exclusivity, all the other components of the public function test delineated in the prior caselaw, such as that "receipt of public funds and the performance of a function serving the public alone are not enough to make a private entity a state actor,” see Groman v. Township of Manalapan, 47 F.3d 628, 640 (3d Cir.1995), remain part of the test.

. It is trae, as the Court of Appeals for the Fourth Circuit recently pointed out, that in Ed-monson, the Supreme Court described jury selection as a unique governmental function. United Auto Workers, 43 F.3d at 906 n. 2. But if "unique” is to be equated with "exclusive” under the discrete test approach, the Court could have stopped at that point. It did not; rather, the Court went on to consider other factors as well.