Filed 8/24/21  Estate of Toles CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Estate of ALONZO TOLES, Deceased. | B296924 |
| CYNTHIA YVONNE EDWARDS, Petitioner and Respondent, v. GREEN'S DEVELOPMENT, LLC, Objector and Appellant. | Los Angeles County Super. Ct. No. BP165396 |

APPEAL from an order of the Superior Court of Los Angeles County, Paul T. Suzuki, Judge. Affirmed.

Law Offices of Frank A. Weiser and Frank A. Weiser for Objector and Appellant.

Thomas Vogele & Associates, Timothy M. Kowal; Burris Law and Jason Burris for Petitioner and Respondent.

# INTRODUCTION

Respondent Cynthia Yvonne Edwards was the surrogate daughter of Alonzo and Estellar Toles and cared for them for the last 20 years of their lives. When Alonzo Toles died in the early 1990s, he left a will bequeathing the Toleses' Compton house to Edwards. Although Edwards never probated the will or transferred the deed, she has lived in the house, maintained it, and paid the property taxes ever since. In 2015, a group of Alonzo Toles's nieces and nephews, led by Eugene Davis, filed a petition to determine succession to the house and have themselves declared Alonzo's heirs. They didn't notify Edwards. The probate court granted the petition, and the relatives sold the property to appellant Green's Development, LLC, which is owned by Alton Green, Edwards's brother-in-law. Edwards finally learned about the probate and sale when a notice of eviction was posted on her door and an unlawful detainer action was brought against her. In response, Edwards moved to set aside the court's succession order, arguing that Eugene Davis had unlawfully failed to notify her of the probate proceedings. The trial court agreed, and, after a bench trial, granted the set-aside petition.

On appeal, Green's Development argues that the court erred by granting the set-aside petition based on extrinsic fraud.[1] We conclude it has forfeited this claim by failing to discuss the evidence in support of the court's order. We therefore affirm.

---

[1] None of the parties to the original petition to determine succession, including Eugene Davis, are parties to this appeal. For clarity, at times we refer to the family members by their first names.

## BACKGROUND

### 1.     Factual Background

Alonzo Toles and his wife Estellar owned and lived in a house in Compton. Although they were unable to have children, they found a surrogate daughter in Edwards, who cared for them for the last 20 years of their lives. Estellar died in June 1991, and Alonzo died in January 1993. Alonzo left a will naming Edwards as his sole heir, and she moved into the Compton house in February 1993. Edwards has lived there ever since, but she didn't understand the importance of transferring title to the property or probating the will. She simply paid the property taxes and the utility bills whenever they arrived.

Although Alonzo Toles didn't have children, his sister Gussie Lou Davis had eight of them, most of whom lived in Alabama, and many of whom had children of their own.[2] One of Gussie Lou's sons was Arthur Davis, who had raised Edwards from birth but had never formally adopted her.[3]

Edwards stayed close to Arthur's other kids and to many of the Alabama relatives throughout her life. The extended family knew about Edwards's relationship with the Toleses and that she had moved into the house after their death—and at least some of them knew about the will. No one ever challenged her presence or tried to claim the property.

---

[2] None of the Alabama relatives attended Alonzo's funeral.

[3] Alonzo brought Arthur to California in 1966, and Edwards joined them two years later.

## 2. Petition to Determine Succession of Real Property

On August 4, 2015, Eugene filed a petition to determine succession to real property.[4] The petition indicated that Alonzo had died intestate; the sole asset of the estate was the Compton house; and Alonzo was survived by Gussie Lou Davis's children and their heirs.[5] Eugene served the subsequent notice of hearing on all of the people listed in the petition—the surviving Davis cousins and the issue of the predeceased cousins. Each of the eight people who were served with the notice of hearing subsequently filed a notice of joinder to the petition. Edwards was not listed as a possible heir and was not given notice.

On February 5, 2016, the court granted the petition and issued an order determining succession to real property. The order stated that Alonzo had died intestate, and it transferred the Compton property to the nine cousins and heirs listed in and served with the case documents.

On November 1, 2016, the property was sold to Green's Development for $210,000. Alton Green is the owner of Green's Development and Edwards's brother-in-law; he is married to Vivi Green, Edwards's half-sister. Alton intended to use the property as a short-term investment; he planned to renovate and re-sell it.

A month later, a notice to quit was posted on the door of the house. Notwithstanding the sale of the property to Green's Development, Eugene filed an unlawful detainer action against Edwards on January 10, 2017. The complaint alleged that

---

[4] The parties stipulated at trial that the petition was filed on September 25, 2015, but that was the date initially set for a hearing on the petition, not the filing date.

[5] Gussie Lou had died sometime in 2014 or 2015.

4

Eugene owned the property, and that on January 1, 2013, Edwards had orally agreed to a tenancy at will.

### 3.    Petition to Set Aside

On January 19, 2017, Edwards filed a verified petition to set aside the order determining succession to real property. Edwards argued that Alonzo had not died intestate, that she was his sole heir, and that the succession order had been procured through extrinsic fraud because she had not been given notice of the action. Edwards represented that the Toleses had "treated and held [her] out as their own." She alleged that Eugene, in particular, knew about the relationship, knew a will might exist, and knew she might have a claim on the property. She attached a copy of the will.

After a one-day bench trial, the court granted the set-aside petition.[6] The court reasoned that "due to the long history of Cynthia Edwards being in the house and the fact that family members did come around, had knowledge of her presence, and the possibility of the closeness between the decedents—both the mother and the father in this case, Mr. and Mrs. Toles—that the court feels that Eugene Davis should have given notice to Ms. Cynthia Edwards that a probate action was happening."

The court held that Edwards's identity was reasonably ascertainable to Eugene; a reasonable person would conclude she might be an heir and/or devisee of Alonzo; Eugene committed extrinsic fraud by denying notice to Edwards, knowing that she would likely object to the petition because she purported to be the

---

[6] Although Eugene had been listed as an expected witness, he did not ultimately testify.

beneficiary of Alonzo's will; and Eugene fraudulently submitted the petition under the rules of intestate succession by not providing notice to Edwards, a person reasonably likely to be a potential heir. Accordingly, the court vacated the February 5, 2016 order determining succession to real property and ordered the property restored to the estate.

Green's Development filed a notice of appeal.

## DISCUSSION

Green's Development argues that the court erred in granting the set-aside petition because Edwards was not a genuinely-known heir, and, therefore, was not entitled to notice.

### 1. Defects in the notice of appeal did not prejudice Edwards.

Edwards asks us to dismiss this matter because the notice of appeal misidentifies the order being appealed. Although Green's Development purports to appeal from "the trial court's Order after Court Trial of October 16, 2018," the order was actually filed on November 29, 2018. We agree that the notice of appeal is deficient but conclude the deficiency did not prejudice Edwards.

In a civil case, the "notice of appeal must be liberally construed. The notice is sufficient if it identifies the particular judgment or order being appealed." (Cal. Rules of Court, rule 8.100(a)(2).) Accordingly, the "rule has long been established that an incorrectly framed notice of appeal will be construed to refer to the correct appealable order assuming that the intention of the appellant is clear. [Citations.]" (*Baldwin Park Redevelopment Agency v. Irving* (1984) 156 Cal.App.3d 428, 433.)

When reviewing the record in this case, we had no difficulty ascertaining Green's Development's intent to appeal from the November 29, 2018 order entered after the August 27, 2018 trial; neither, we are sure, did Edwards.[7] The notice of appeal plainly referred to the court's "Order after Court Trial"—and there was only one such order here. The reason for the error is also clear. The order after trial had been drafted by counsel for Edwards and served on Green's Development on October 16, 2018. When the court ultimately signed and filed the order on November 29, 2018, the October proof of service was still attached. Furthermore, to the extent there was any confusion, the subsequently-filed designation of record clarified that the appeal was from "the trial court's Order after Court Trial filed November 29, 2018 … ." In short, it's clear that Edwards has suffered no prejudice and would not have proceeded differently had Green's Development properly identified the order after trial as having been filed on November 29, 2018, rather than October 16, 2018.

We also conclude the notice of appeal was timely. Because the record does not contain a notice of entry of the order, Green's Development was required to file a notice of appeal within 180 days from the November 29, 2018 order. (Cal. Rules of Court, rule 8.104(a)(1)(C).) Although the notice of appeal contains several purported service and filing dates, it appears to have been filed on the last of these dates, April 10, 2019, the date

---

[7] Indeed, in her respondent's brief, Edwards herself incorrectly identifies the trial date as October 16, 2018. We had no trouble figuring out what she meant.

stamped in the electronic-filing header. Because the notice was filed within the 180-day period, it was timely.

## 2.    Legal Principles and Standard of Review

Courts have the inherent power to set aside judgments procured by the extrinsic fraud of denying an adversary the opportunity to present her claim or defense to the court. (*Estate of Carter* (2003) 111 Cal.App.4th 1139, 1154 (*Carter*).) " 'Extrinsic fraud is a broad concept that "tend[s] to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing." ' [Citations.] The clearest examples of extrinsic fraud are cases in which the aggrieved party is kept in ignorance of the proceeding or is in some other way induced not to appear. [Citation.] In both situations the party is 'fraudulently prevented from presenting his claim or defense.' " (*Estate of Sanders* (1985) 40 Cal.3d 607, 614–615; see *id.* at p. 619 [reversing denial of motion to set aside probate orders; allegations, including that the executor "concealed ... that he had arranged for the decedent to change her will to leave most of the estate to him" and "assured [the beneficiaries] ... he would represent their interests," would "if true, clearly show extrinsic fraud"]; *Carter*, at pp. 1143–1144, 1154–1155 [affirming order vacating final distribution; brother, who filed probate petition, engaged in extrinsic fraud by determining decedent's daughters born out of wedlock were not heirs and not providing notice].) "The courts are particularly likely to grant relief ... where there has been a violation of a special or fiduciary relationship." (*Sanders*, at p. 615.) "[T]he ... administrator occupies a fiduciary relationship in respect to all parties having an interest in the estate ... ." (*Nathanson v. Superior Court of Los Angeles* (1974) 12 Cal.3d 355, 364.)

8

Probate Code[8] section 8110 requires that notice of the hearing for administration of a decedent's estate be given to all heirs, "so far as known to or reasonably ascertainable by the petitioner" and all devisees "in any will being offered for probate, regardless of whether the devise or appointment was purportedly revoked in a subsequent instrument." Section 11601 requires notice of the hearing on the petition for final distribution be given to each heir and devisee "whose interest in the estate would be affected by the petition" (as well as the Attorney General and/or Controller, in certain cases).

The courts have concluded that notice must be served upon potential claimants whose identity is known or reasonably ascertainable. (See *Tulsa Professional Collection Services, Inc. v. Pope* (1988) 485 U.S. 478, 490–491 (*Tulsa Collection*).) *Reasonably ascertainable* has "a broad meaning, sufficient to include individuals (1) whose identities are known to the petitioner and (2) who reasonably might be heirs." (*Carter*, *supra*, 111 Cal.App.4th at p. 1142.) If a petitioner fails to give notice to a genuinely known or reasonably ascertainable heir, he commits extrinsic fraud. (*Id.* at pp. 1149, 1154.)[9]

When reviewing set-aside orders, "the trial court's findings of fact pertaining to the existence of extrinsic fraud or extrinsic mistake are reviewed for substantial evidence. But our overall

---

[8] All undesignated statutory references are to the Probate Code.

[9] The same rule applies to reasonably ascertainable creditors under section 9050. (*Carter*, *supra*, 111 Cal.App.4th at pp. 1145–1146.) Edwards argued below that even if she was not entitled to notice as a possible heir, she was entitled to notice based on her interest in the property because she had acquired the house through adverse possession. She does not raise that issue on appeal.

9

review of the trial court's application of those findings is for an abuse of discretion." (*Kramer v. Traditional Escrow, Inc.* (2020) 56 Cal.App.5th 13, 28, construing *Carter*, *supra*, 111 Cal.App.4th at p. 1154; *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712 ["The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious."].)

**3.     Green's Development has forfeited its appellate claims.**

Green's Development contends that Eugene was not required to notify Edwards that he had filed a petition to determine succession to the Compton property because she was not a genuinely known heir. This amounts to an argument that the court abused its discretion because its ruling is not supported by substantial evidence. Edwards argues that Green's Development has forfeited this claim. We agree.

" 'An appellant challenging the sufficiency of the evidence to support the judgment must cite the evidence in the record supporting the judgment and explain why such evidence is insufficient as a matter of law. [Citations.] An appellant who fails to cite and discuss the evidence supporting the judgment cannot demonstrate that such evidence is insufficient. The fact that there was substantial evidence in the record to support a contrary finding does not compel the conclusion that there was no substantial evidence to support the judgment.' [Citation.]" (*Verrazono v. Gehl Company* (2020) 50 Cal.App.5th 636, 652.) Green's Development's opening brief in this appeal does not contain a statement of facts; it cites to only two pages of the 101-

10

page reporter's transcript; and it ignores all the testimony that supports the court's order. By failing to acknowledge the contrary evidence in this case, Green's Development has forfeited its claim that the court erred.

Nevertheless, Green's Development insists that this rule of appellate forfeiture does not apply because this case "presents an important constitutional due process issue" and "[c]onstitutional issues are generally reviewed independently." In support of this claim, it cites to a handful of cases involving the Confrontation Clause of the Sixth Amendment, a case about whether a pretrial lineup was unduly suggestive, and a couple of cases about the First Amendment. Certainly, we independently review questions impacting freedom of speech or criminal defendants' fundamental rights—but it is unclear how those bedrock principles apply here.

To the extent Green's Development is arguing that de novo review applies here because the probate court was interpreting a notice statute, and the material facts are undisputed, it is mistaken. (Cf., e.g., *Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 212–213 [applying de novo review in trust dispute, where, among other things, trial court did not assess credibility of witnesses and appeal turned on the meaning of a statutory phrase]; *Estate of MacLeod* (1988) 206 Cal.App.3d 1235, 1241 [using independent review in will contest, where extrinsic evidence was not in conflict].) Although section 8110 was revised to comport with the constitutional requirements laid out in *Tulsa Collection*, *supra*, 485 U.S. 478, the court here was applying extrinsic fraud principles, not interpreting the Probate Code, and the facts were not undisputed. Edwards and Green's Development provided conflicting accounts regarding who knew what and when, and would have us draw different inferences

11

about whether Edwards was a reasonably ascertainable heir. (See *Bower v. Inter–Con Security Systems, Inc.* (2014) 232 Cal.App.4th 1035, 1043 ["Independent review is appropriate only when the facts permit just one reasonable inference."].)

Finally, Green's Development asserts that "even if the trial court were found to be correct that Edwards was entitled to notice, the trial court erred in not determining that GLLC, as a purchaser of the subject property[,] was entitled to a return of its purchase monies." Green's Development has forfeited this argument by failing to develop it. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 [absence of cogent legal argument or citation to authority forfeits the contention; "[w]e are not bound to develop appellants' arguments for them"]; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [failure to develop claim with reasoned legal argument and supporting authority forfeits the issue].) Regardless, the argument is premature. The court below decided neither the will's validity nor the ultimate question of the property's ownership. And it was not asked to decide whether Green's Development should get its money back. As such, the question is not encompassed by the order from which Green's Development appeals.

## DISPOSITION

The order is affirmed. Cynthia Yvonne Edwards shall recover her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.